### JESSE HAMILTON v. THE STATE.

#### No. 1924. Decided April 18, 1900.

**1. Assault to Murder—Evidence—Malice—Motive.**

On a trial for assault with intent to murder, where it appeared that the prosecutrix was defendant's divorced wife, evidence was admissible to show a previous assault by defendant upon the mother of prosecutrix because she interceded with him in behalf of her daughter, whom he was beating prior to the divorce. Such evidence was competent to show the motive, animus, and malice of defendant towards prosecutrix.

**2. Same—Charge of Court Limiting and Restricting.**

On a trial for assault with intent to murder, where evidence of ·previous assault by defendant upon prosecutrix has been admitted, and where such testimony could not have been considered and used by the jury for any other purpose than as it might illustrate defendant's motive, malice, and intent in the case on trial, it was not obligatory upon the trial court to limit and restrict such testimony in his charge to any specific intent.

**3. Same—Remote Evidence.**

On a trial for assault by defendant upon his divorced wife with intent to murder her, evidence of previous assault upon her is not obnoxious to the objection that it is too remote because afterwards his wife became reconciled to and lived with him until the divorce. Such evidence was admissible to show intent, motive and malice.

**4. Assault with Intent to Murder—Constituents of.**

It is not necessary that there should be "a deliberately formed intent to kill" to constitute an assault with intent to murder. It is sufficient if the intent to kill arose from a sudden impulse without adequate cause, and the malice actuating the intent may be express or implied.

APPEAL from the District Court of Hays. Tried below before Hon. H. TEICHMULLER.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The appellant was charged by the indictment with an assault to murder his divorced wife, Sallie Hamilton, on March 25, 1899.

On the trial defendant saved a bill of exceptions to a portion of the testimony of the prosecutrix Sallie Hamilton, as follows:

"Defendant, Jesse Hamilton, was my husband until we were divorced. I secured a divorce from him during the last district court here at San Marcos, about the last of February. We had been married between three and four years. On Sunday night, the 18th of March, ·1899, at Kyle, Hays County, Texas, he shot at me with a pistol." The State then proposed to have her further testify as follows: "Before that [the shooting on March 18, 1899] he frequently assaulted me. On one night, about a year before he shot me, he beat me up awfully, and when I got away by running around a bed, he took a slat from the bed and with it beat my mother so that she was laid up in bed several days. My mother interceded for me and Jesse then turned on her. I have scars on my person made by him. On one occasion he stabbed me with a knife, and the scar is there now. This was before he beat my mother with the slat. He has also thrown smoothing irons at me and beaten me with wood, etc. He and I lived together

in the same house until I got my divorce. Sometimes he would treat me all right and we would get along nicely for several weeks or a few months, and then he would again abuse me and beat me up. Some of the time we would get along right, and some of the time we would not. He whipped me once at Fannie Harris'."

The defendant's attorney objected to the introduction of said testimony in the case, because: (1) Same was remote and was irrelevant to any issue in this cause now on trial, and did not tend legitimately to prove any controverted fact alleged and charged against defendant by the indictment in this cause. (2) Any previous assaults upon and cruel treatment by defendant of his wife and her mother were immaterial to any issue made by the pleadings in this case. (3) Such evidence showed such other assaults to be remote in point of time, and that all such assaults had been condoned by the wife and that she and defendant continued to live together thereafter. (4) It raised collateral issues and called upon defendant to disprove, explain, or justify transactions with which he was not charged or in any way notified that he would be expected to meet. (5) It was calculated to improperly prejudice the jury against him and his cause, and to improperly lead them to lean toward a conviction and punishment of him in this case for matters not charged against him. (6) An assault upon the mother could not prove malice against the daughter, and was too remote.

Defendant also saved a bill of exceptions to the testimony of Jennie Hamberger, the mother of prosecutrix, to the effect that her (the mother's) paralyzed and helpless condition as exhibited on the witness stand was the result of an assault made upon her by defendant.

Defendant's refused special requested instruction upon the intent of defendant at the time he fired the pistol, and which it is insisted the court should have given, is copied into the opinion below.

*Will G. Barber* and *B. G. Neighbors*, for appellant.—As a general rule it is never permissible to prove a defendant guilty as charged, by showing that he was guilty of a like offense upon another occasion. Freedman v. State, 38 S. W. Rep., 993; Bain v. State, 44 S. W. Rep., 518; Long v. State, 47 S. W. Rep., 363; Barkman v. State, 52 S. W. Rep., 69; People v. Stewart (Cal.), 24 Pac. Rep., 722; Shaffner v. Commonwealth, 72 Pa. St., 60, 13 Am. Rep., 649.

A prior assault should never be admitted to prove motive or malice unless there is some logical connection between it and the particular act under investigation; and where it is remote in point of time, or the evidence affirmatively shows that before the assault in question the ill will or malice prompting the former assault had ceased to exist, then the assault itself should be excluded. Herman v. State, 75 Miss., 340; Barkman v. State (Texas), 52 S. W. Rep., 69; Dillin v. People, 8 Mich., 366; Shaffner v. Commonwealth, 72 Pa. St., 60, 13 Am. Rep., 649; Farris v. People (Ill.), 4 L. R. A., 582; State v. Jeffries (N. C.), 23 S. E. Rep., 163; Parkison v. People (Ill.), 10 L. R. A., 91; Pounds v. State, 43 Ga., 88.

Evidence of an assault by defendant upon the mother of his wife, a year before the assault upon the wife, is not admissible upon the trial of defendant for the latter.

Even where it is admissible to prove extraneous and collateral crimes, the State should not be permitted to go into the detail thereof and show extremely cruel and outrageous conduct on part of defendant, thereby prejudicing the jury against defendant and his case. Green v. Commonwealth (Ky.), 33 S. W. Rep., 100.

Defendant's bills numbers 1, 2, and 3 show that the State proved the aggravated nature of previous assaults by defendant on his wife and her mother, the latter even being permitted to state that as a result of defendant's beating her she had become paralyzed and helpless. Ware v. State, 38 S. W. Rep., 198; Lawrence v. State, 84 Ala., 424; Stitt v. State, 91 Ala., 10; Hale v. State, 72 Miss., 140; Martin v. Commonwealth (Ky.), 19 S. W. Rep., 580; Commander v. State, 60 Ala., 1; Pinckard v. State, 13 Texas Crim. App., 468; Webb v. State, 35 S. W. Rep., 380.

The evidence being admitted only to prove malice, should have been limited to this purpose by the court's charge.

Where proof of extraneous crimes is admitted, it must always be limited, unless it is clear that the jury could not have used it for any improper purpose.

Former assaults by defendant upon his wife and her mother were not properly entitled to be used by the jury to increase the punishment to be assessed for the assault on trial, and the jury should have been so charged, especially when requested by defendant.

The malice which may have prompted the former assaults upon Sallie and her mother could not be transposed to or be used to supply or supplement the malice necessary to make assault to murder out of the assault charged.

Under these four propositions the following authorities are submitted:

(1) Evidence of this character having been admitted was limited in the following cases: Oneil v. State, 51 Kan., 651; Boyle v. State, 61 Wis., 440; Commonwealth v. Watkins, 9 Conn., 52; State v. Greene, 35 Conn.; Moore v. State, 28 Texas Crim. App., 377; Martin v. State, Id., 364; Johnson v. State, 29 Texas Crim. App., 152; Blackwell v. State, Id., 200; West v. State, 33 S. W. Rep., 227; Morrison v. State, 51 S. W. Rep., 36; Martin v. State, 53 S. W. Rep., 849; Green v. Commonwealth (Ky.), 33 S. W. Rep., 100; Commonwealth v. Bell, 31 Atl. Rep., 123; State v. Robinson, 48 Pac. Rep., 357; State v. Stice, 55 N. W. Rep., 17; State v. Lewis, 65 N. W. Rep., 245; State v. Hayes, 46 Pac. Rep., 752.

It is apparent from these and many other cases which might be cited that the courts have generally recognized not only the fairness but the necessity of limiting this character of evidence. The first four cases are wife murder and apply the proposition to practically identical facts with those in hand. They are not cases where the danger to be

guarded against was a conviction for some other offense instead of the one charged.

(2) In the following, among other cases, it has been held reversible error to fail to limit the purpose of extraneous crimes and charges thereof: Taylor v. State, 22 Texas Crim. App., 529; Davidson v. State, Id., 372; Washington v. State, 23 Texas Crim. App., 336; Maines v. State, Id., 568; Davis v. State, Id., 210; Barton v. State, 28 Texas Crim. App., 483; Pinckard v. State, 13 Texas Crim. App., 468; Martin v. State, 35 S. W. Rep., 976; Higginbotham v. State, 24 Texas Crim. App., 505; Martin v. Commonwealth, 19 S. W. Rep., 580; Baker v. Commonwealth, 50 S. W. Rep., 54; People v. Schilling (Mich.), 68 N. W. Rep., 232; Commonwealth v. Shepard, 1 Allen, 575; State v. Lewis, 24 Pac. Rep., 914. See also Reno v. State, 25 Texas Crim. App., 103, and that line of cases.

The Hall case, 21 Southwestern Reporter, 368, is relied upon by the State's attorney as conclusive of the question presented. In that case, the particular reasons that we urge why the failure to limit the evidence as prejudicial were not presented nor was exception taken to the charge at time given; and the opinion clearly recognizes that the broad proposition contended for by the State here will not do. Referring to the rule, the opinion says one of the reasons therefor "is to guard him from prejudice that might occur on account of such crimes being admitted as evidence." It also seems to consider that the evidence there admitted was not of an independent offense (which will certainly not be contended here especially as to the assault on the mother). No authorities are cited on this branch of the opinion. On the admissibility of the evidence he cites two cases from 3 Parker Criminal Reports, 33; Grattan, 766; 88 Pennsylvania State, 291; Wharton's Criminal Evidence, section 51, and cases cited in note 3, and section 786, and cases cited in notes 3, 4, 5, and 6. Neither the Virginia, the Pennsylvania, nor the Criminal Report cases touch on the question as to limiting the evidence. Of the cases cited by Judge Davidson, as collated in the notes of Wharton referred to, only the following are in point, even as supporting the admissibility of the testimony: State v. Langford (N. C.), Busbee, 436; Commonwealth v. Watkins, 9 Conn., 52; State v. Greene, 35 Conn.; Johnson v. State, 17 Ala.; People v. Kern, 61 Cal., 244. Several of the other cases cited do not seem to bear even remotely on the point. One case cited, Cole v. Commonwealth, as being in 2 Grattan, I fail to find there. Of the five cases fairly in point, only two (the Connecticut cases) touch on the question of whether this character of evidence should be limited, and they each clearly recognize and announce the necessity of limiting such evidence.

We call the court's attention to at least two unauthorized purposes for which it was very probably used, that is: First, to increase the punishment assessed; second, another purpose which this evidence was probably improperly used for was to supply the malice necessary to conviction. Here again let it be understood we are not now com-

batting the admissibility of this evidence as tending to show the existence, at the time the pistol fired, of the malice necessary to make the assault an assault to murder. But suppose the jury, after considering this and all the other evidence, were not satisfied of the existence of malice aforethought at time the pistol fired, but were satisfied from the cruelty and aggravation characterizing the other assaults, that they were prompted by malice; was there not great danger that they would treat this as sufficient? The defendant undertook to guard against this, but the trial court seemed to take a different view of the law, and the very fact that this charge, when requested in open court, was refused, would probably lead the jury to accept as true the converse of the proposition.

It may be said that as the charge required the jury before convicting to find that the assault was committed unlawfully, with the specific intent to kill, and also to find the nonexistence of defendant's contention that the gun fired accidentally, the only excuse or justification offered, that from the finding of these facts the law would imply malice, and therefore no injury could have occurred to defendant. To this we reply that the malice must be found by the jury alone, and they must find this malice—this condition of mind—to exist at the very time the assault was committed. Malice aforethought must concur with every one of the other ingredients which the charge required to be found. Hayes v. State, 14 Texas Crim. App., 400; Ponton v. State, 34 S. W. Rep., 950. Under such a view there would be no necessity of submitting to the jury the question of malice at all,—it being sufficient to only require them to find the facts from which an implication of malice would be authorized. This, of course, would be error. Williams v. State, 3 Texas Crim. App., 316. While the charge properly defined malice and required the jury to find it, we contend it should have told them that the malice prompting former assaults would not meet the requirement, especially when this was requested.

*Rob't A. John,* Assistant Attorney-General, for the State.—Appellant's bills numbers 1, 2, and 3 involve the same point. The State upon the issue of malice proved by the witnesses Sallie Hamilton and Jennie Hamberger a course of ill treatment, quarrels, altercations, fights, and assaults existing between appellant and his divorced wife anterior to the homicide. Appellant insists that the evidence is not admissible for the several reasons assigned in the different bills. On that issue the State cites the case of Hall v. State, 31 Texas Criminal Reports, 565, as directly in point; and submits as a proposition, that on the trial of a husband for an assault upon his wife, the State has a right to prove a course of ill treatment by the husband of the wife on the issue of malice. Hall v. State, 31 Texas Crim. Rep., 566; Whart. Crim. Ev., 9 ed., sec. 51, note 3.

The contention that the assault made by appellant upon Jennie Hamburger (the mother of the injured party) is not admissible, be-

cause immaterial and irrelevant, is not tenable, as from an inspection of the facts authenticated by the bills, it will be seen that in each instance the assault made upon the mother-in-law was when she was interceding to prevent appellant from abusing his wife, and was a part of the res gestae of the abuse, which is not a collateral inquiry, but is direct in its nature, and therefore is part of the res gestae of the assault; or in other words, res gestae of the malice involved, and is admissible. In every instance the assault made upon the mother succeeded and was a part of the assault upon the injured party, his divorced wife.

The fourth bill complains of the action of the court in failing to limit the previous assaults made upon the injured party, his divorced wife, to the issue of malice, and specifically instruct the jury that they could not consider said previous assaults, altercations, and quarrels for any purpose. The court said in the Hall case, supra, Judge Davidson rendering the opinion, that the trial court in that case did not err in omitting to restrict evidence of previous assaults, altercations, and quarrels to the issue of motive or malice. The following language is quoted: "The authorities cited by appellant sustain the proposition that when independent, contemporaneous crimes, or crimes showing system, are adduced and relied on to connect the accused with the offense on trial, or to develop the res gestae, or to show intent, they should be restricted to their proper office by appropriate instruction. The rule grows of the necessity of protecting the accused against conviction of an offense not charged in the indictment, and to guard him from prejudice that might occur on account of such crimes being admitted as evidence. But the evidence under discussion is a part and parcel of this case, belongs to and grows out of it, is not an independent offense, and does not come within the rule invoked by appellant. Judge Wilson, in the Leeper and Powell case, states the rule in reference to limiting extraneous matter to be based upon the proposition asserted in the Hall case, and says that "when the apparent extraneous matter bears directly upon the issue, that it should not be restricted for any specific purpose, and illustrates it in that case by showing that, the appellant being charged with murder, and the antecedent crimes introduced to show motive being an assault to murder, it could not have possibly misled the jury, and to have caused them to consider it for any other purpose than for which it was introduced. By an inspection of the charge of the court in this case it will be seen that appellant's guilt is limited to that assault alleged in the indictment, i. e., the assault made with the pistol. No extraneous assaults on the issue of motive was committed with the pistol. Therefore the jury could not have been confused and misled. Their limitation to find defendant guilty of the assault committed with the pistol sufficiently restricts the evidence introduced, in so far as the jury weighed antecedent assaults as an aggravation of the one for which defendant was tried. This was not only legitimate and proper, but was the very purpose for which the same was introduced; that is,

to show malice, and the showing of malice was to be used by the State
to aggravate the assault and to make it one with intent to murder.

As to bill number 5, appellant complains that the court failed to
apply the reasonable doubt directly and the degrees of the offense
involved, to wit, an aggravated assault and an assault to murder. An
inspection of the charge does not bear out appellant in this conten-
tion. Section 7 of the charge applies the law of assault with intent
to murder properly, and instructs the jury, if they believe that the
elements of assault with intent to murder are shown, to find defendant
guilty of that offense. Section 8 reads as follows: "If you believe
from the evidence that Jesse Hamilton did assault Sallie Hamilton,
but with no intention of killing her, or if you have a reasonable doubt
of his assaulting her with such intention to kill her, you will find
defendant guilty of an aggravated assault, and assess his punishment
accordingly." This gives appellant the benefit of the reasonable
doubt, should any exist, between the two grades of assault involved.

The sixth bill complains of the action of the court in not charging
that, at the time the gun was fired by appellant, he had in his mind
the deliberately formed intent to kill Sallie Hamilton. This is not
the law. "Sedate and deliberate mind and formed design" is an ele-
ment of murder in the first degree, but the jury could have found
that the sudden attempt to kill, unexplained and not based upon
adequate cause, would constitute an assault with intent to murder,
it being the incompleted act of murder in the second degree.

As to the evidence not being sufficient, the State insists that the
verdict of the jury is amply sustained by the evidence. Appellant
said to his wife, after having had previous trouble, altercations, etc.,
"Yes, I will fix you," and fired the pistol at her, powder-burning the
side of her face; and subsequent to this attempt to kill her, flees the
country and becomes a fugitive from justice. The expression "Yes,
God damn you, I will fix you," shows both deliberation and the
specific intent to kill. The fact that the injured party dodged when
appellant was in the act of firing, and the ball missed her, although it
went close enough to powder-burn the face, does not destroy the con-
tention of the State that the intention was specific to take the life.
His defense was strenuously urged, and adroitly presented, but the
jury evidently did not believe the same. This was their province.

BROOKS, JUDGE.—Appellant was convicted of an assault with in-
tent to murder his divorced wife, Sallie Hamilton, and his punishment
assessed at confinement in the penitentiary for a term of five years.

In bills numbers 1, 2, and 3, appellant urges the following matters
as error, to wit: In bill number 1 it is shown the State proved by
Sallie Hamilton, the injured female: That appellant was her divorced
husband. That they had been married three or four years. That,
before the shooting in this instance, appellant had frequently
assaulted witness. One night, about a year before, he shot at her
and beat her up; and when witness got away, by running around the

bed, he took a slat from the bed and beat her mother so she was laid up for several days in bed. Witness' mother interceded for her, and appellant turned upon and beat her mother. Prosecutrix stated she had scars on her person now, made by defendant. On one occasion he stabbed her with a knife. He had also thrown smoothing irons at her, and beat her up with sticks of wood. Prosecutrix and appellant lived in the same house until she secured the divorce. The State offered this testimony on the ground of malice, and it was admitted. Appellant objected upon the following grounds: (1) That the same was too remote, and irrelevant to any issue on the trial of this cause, and did not tend legitimately to prove any controverted fact. (2) Any previous assaults upon and cruel treatment by appellant of his wife and mother were immaterial to any issue made by the pleadings in this case. (3) Said evidence shows such other assaults to be remote in point of time, that all such assaults had been condoned by the wife, and that she and defendant continued to live together thereafter. (4) It raised collateral issues, and called upon appellant to disprove or justify each of the transactions, with which he was not charged, or in any way notified he would be expected to meet. (5) It was calculated to improperly prejudice the jury against him and his cause, and to improperly lead them to lean towards a conviction and punishment of appellant for matters not charged against him in this case. (6) An assault upon the mother could not prove malice against the daughter, and was too remote. In bill number 2, the State introduced Jennie Hamberger, who, after stating she was the mother of the injured female, Sallie Hamilton, testified, over appellant's objection: That before appellant shot at Sallie Hamilton, which shooting occurred on March 18, 1899, and for which he is charged with assault with intent to murder in this case, appellant had fought and whipped Sallie a number of times. They got along all right some of the time, but much of the time they did not. He beat her unmercifully,—once with the window stick; another time, stabbed her with a knife; and on another occasion he began beating Sallie, and when she ran behind the bed, and witness begged appellant to desist, he took a bed slat and beat witness with it until she was compelled to go to bed. Bill number 3 complains that the State asked Jennie Hamberger the following question: "Were you not, during the time that Sallie and appellant had their troubles, and up until the divorce, a big, strong, healthy negro woman?" To which the witness answered: "Yes; but this beating me up so with the bed slat is what caused me to be this way, the doctor says." Appellant also objected to all this testimony on substantially the same grounds stated above with reference to bill number 1.

In Leeper v. State, 29 Texas Criminal Appeals, 63, we held that where several assaults are committed at the same place, and almost simultaneously in point of time, and of the same manifest purpose, and were so closely connected as to relate and be illustrative of each other, making each res gestae of the other, then said assaults so com-

mitted, are admissible; moreover, that said testimony is admissible and competent upon the question of motive, and was not such extraneous matter as to require the trial court to charge the jury in their consideration of extraneous matter as to the specific purposes for which it is admitted. The testimony of the prosecutrix's mother in this case clearly comes within the rule laid down in the above cited case. The assault upon the mother, occurring contemporaneously with the previous assaults upon the prosecutrix, is res gestae, and illustrative of the animus, motive, and malice of appellant in making the previous assaults upon the prosecutrix. Furthermore, we have frequently held it is permissible for the State, as going to show motive and malice on the part of appellant, to prove by prosecuting witness that appellant had previously made several assaults upon prosecuting witness, and where such testimony could not, in the nature of things, be used by the jury for any purpose other than to illustrate the motive, malice, and intent of appellant in committing the assault for which he is then being tried, clearly such testimony is not only admissible for said purposes, but it is not the duty of the trial court to limit such testimony in his charge to any specific intent, since its admission can not be considered for any purpose other than as above stated. For a full discussion of this matter, see Kitchen v. State, 26 Texas Crim. App., 165; Hudson v. State, 28 Texas Crim. App., 323; Hall v. State, 31 Texas Crim. Rep., 566; Wilkerson v. State, 31 Texas Crim. Rep., 86; Hamblin v. State, ante, p. 135; Spears v. State, ante, p. 527. On the question that the testimony above discussed is too remote, because prosecutrix had become reconciled to appellant, we do not think the bill of exceptions shows such state of facts as to justify appellant in invoking this rule; but, on the other hand, we think the testimony is admissible upon the issues stated above.

Bill number 5 insists that the court erred in refusing to apply in his charge the reasonable doubt directly to the degrees of offense. An inspection of the charge does not bear out appellant's contention, for the court gave the reasonable doubt on the degrees of the offense.

In the sixth bill he complains that the court erred in failing to charge: "Before you can convict defendant of an assault to murder, you must find, beyond a reasonable doubt, that, at the time the gun fired, defendant had in his mind the deliberately formed intent to kill Sallie Hamilton; and, if you do not so find, you will acquit defendant of an assault with intent to murder." The court did not err in refusing to give this charge, since one can be guilty of an assault with intent to murder upon either express or implied malice, and hence it is not necessary that the "deliberately formed intent to kill" should exist, but if the intent to kill arose from a sudden impulse, without adequate cause, as indicated in the usual charge of murder in the second degree, the assault may still be an assault with intent to murder.

We have carefully reviewed appellant's able brief, and listened with pleasure to his strong oral argument, but we feel constrained

to say the record before us discloses no such error as authorizes a reversal. The evidence is ample to support the verdict, and the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without any written opinion.—Reporter.]