### FLOYD STANTON V. THE STATE.

#### No. 2480.   Decided May 28, 1913.

**1.—Murder—Evidence—Bill of Exceptions.**

Where the qualification of the bill of exceptions showed that the witness testified that several months prior to the killing he saw deceased and defendant and that the latter told the witness that he had blacked deceased's eyes, some two years prior to the homicide, there was no error in admitting this in evidence, the bill having been accepted with this qualification.

**2.—Same—Evidence—Motive.**

Upon trial of murder, there was no error in admitting in evidence the long continued ill-treatment of the deceased by the defendant, and where the bill of exceptions as qualified by the court presented no error, there was nothing to review.

**3.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions as qualified by the court showed that the details of a former trouble between defendant and deceased were not admitted in evidence, but simply that defendant assaulted deceased, there was no error.

**4.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions is so qualified by the court that it presents no error and is accepted by the defendant as correct, there is nothing to review.

**5.—Same—Argument of Counsel—Conduct of Counsel—Bill of Exceptions.**

Where the bill of exceptions as qualified by the judge with reference to the conduct of State's counsel in producing a hatchet in the presence of the jury did not show such error as to cause reversal, there was no error.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence was sufficient to sustain a conviction assessing the death penalty, there was no error.

Appeal from the Criminal District Court of Dallas No. 2. Tried below before the Hon. Barry Miller.

Appeal from a conviction of murder in the first degree; penalty, death.

In addition to the evidence stated, in the opinion of the court, it was shown that the officer who arrested the defendant testified that before he arrested him, defendant said, "You know that woman has been bleeding me all the time," in answer to a remark by his brother, and further said, "Here I am, Cap," and that this was all said before defendant was arrested and immediately after the shooting.

Among other witnesses, the defendant introduced his sister, who nursed him when a child, who testified that when defendant was about ten years old she fell out of a porch with him and broke his left arm and knocked a hole in his head and that he was unconscious about three or four hours, and that this affected his mind and that he was never right thereafter; that she always attended to his business when he was around her for many years, paying his rents, etc., and that at one time he paid his rent twice; that his mind was not right; that he could not carry on a good conversation; that she always treated him as a child. Other testimony was introduced on this line, and it was shown that at times he was peculiar, etc. It was also shown by the testimony for the defendant that he had reason to believe that his wife was unfaithful to him.

Defendant testified in his behalf. He testified substantially that he believed that his wife had been having illicit relations with another; this led to their separation; that he never maltreated her and was still giving her money when she needed it; that on the day of the killing he had met her at another place than where the homicide occurred and she insisted upon having more money, but that he had none, and that she searched his pockets and could not find any; that she then told him that she must have money that day; that if he did not get it for her she would kill him; that when she approached him at the place of the homicide, after the meeting that day, she insisted on getting money from him and reminded him of what she said; that she threw her hand in her jacket, and defendant believed she was going to shoot him, and thereupon shot her, etc.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was given the death penalty for killing his divorced wife.

It is not the purpose of this opinion to go into a statement of the evidence, except in the most general way. The evidence, in substance, is, that appellant shot his divorced wife nine times, two of the shots were fired after she fell; that while shooting her she ran, he chasing her.

They had been married ten or twelve years, and for the last two or three years he had been very unkind to her in many ways, beating her and making various assaults upon her. One time, on the 19th of June prior to this homicide, he had made a vigorous attack upon her with a hatchet, which resulted in her securing a divorce the following September after the aforesaid occurrence on the 19th of June. On the occasion of the homicide she had gone to the place where he was an employe, it seems, in pursuance of some understanding between them by means of telephonic conversation. Anyway she went to where he was at work. He was armed with an automatic pistol. After talking a few minutes, none of which conversation was heard by any of the witnesses, he began shooting her and she ran, and he continued shooting until she was down, and fired two shots at her after she fell. The appellant, testifying to the immediate facts, said that she had continually demanded money of him after they were divorced, and he believed she had been unfaithful to him before the dissolution of the marriage, and that was the occasion of his previous trouble with her and the assaults upon her, and that she had on one or more occasions threatened to kill him if he did not give her all the money she wanted, and that on this particular occasion she had demanded money of him, and had reached in her bosom, as he thought, to draw a pistol or to execute the threats she had made, therefore he began shooting. This is a sufficient statement of the case to discuss the questions.

There is no attack made on the charge of the court. In the motion for new trial it is claimed the court erred in not giving a special instruction with reference to the argument of counsel for the State.

The first bill of exceptions recites that the State's witness testified that "some two years ago she had seen the deceased with black eyes and bruises on her throat, and that the deceased had told her the defendant had caused them." Various objections were urged to this testimony. The court thus qualifies the bill: "No such statements as the above were made by the witness Tama Johnson. The witness Edgar Johnston testified that several months prior to this killing he saw deceased and defendant in Dallas, and defendant told him he blacked deceased's eyes. There was no objection to this testimony of Edgar Johnston." The bill having been accepted with this qualification, there is no error shown. The court certifies in the qualification that the testimony alleged to have been admitted was not admitted at all, and that no such statements were made by deceased.

Another bill recites that while the State's witness Fuller was testifying he stated that about two years ago the defendant admitted to him that he had mistreated his wife, the deceased, and that his conduct towards the deceased was due to bad whisky and the devil. Various objections were urged to this testimony. The court qualifies the bill by stating no such statement as the above was made by the witness Frank Fuller. He further qualifies it by stating Edgar Johnston was asked this question on cross-examination by the defendant's attorneys, and

gave the above testimony. This presents no error, and it is unnecessary to discuss it. The long continued ill-treatment of the deceased by the appellant, however, was admissible under a long line of cases in this State. See Hamilton v. State, 41 Texas Crim. Rep., 644, for collation of authorities, page 652.

Another bill recites that Johnnie Johnson was permitted to testify to the details of an assault on the 19th day of June, 1912, in Kaufman County, made by defendant on his wife, the deceased, for which the defendant had been tried in the District Court of Kaufman County, and convicted and sentenced to two years confinement in the State penitentiary; and in addition to testifying said charge had been filed against the defendant in Kaufman County, she further testified that she had witnessed the assault made by the defendant on deceased; that he struck her on the head six times with a hatchet; that she was in bed a month as a result of same. It is unnecessary to state the objections urged to this. The court qualifies this bill by stating: "The court did not permit the State to prove the details of the trouble by this witness nor the fact that defendant had been given two years in the penitentiary, nor the fact that defendant had been tried in Kaufman County for this offense; nor the fact that defendant had been charged with this offense. The court stated to the jury in regard to the testimony offered, the following: 'The court without going into the details, I will permit the State if it can show that the defendant assaulted her on the 19th day of June of this year.'" As this bill is qualified there is nothing to consider.

Another bill recites while Marshall Stanton, a witness for the defendant, was testifying on cross-examination, he was permitted to testify that the defendant at a time when defendant and witness were small boys, witness being a brother of defendant, the defendant struck the witness in the face with the result of knocking one of his eyes out, said witness appearing to the jury to have only one eye. Witness further testified that he was thirty-seven years of age, and that the assault made upon him by defendant was when he and defendant were small boys. Various objections were urged to this testimony. The court signs this bill but qualifies it in this manner: "The defense was being put into the case that defendant was of unsound mind and the State was attempting to show defendant was of severe temper and mean. The State asked the following question on cross-examination. The testimony of the witness Marshall Stanton on the point mentioned is as follows: "Now, isn't it a fact that he has got a bad temper and one time he got mad at you and knocked one of your eyes out, and as a consequence you have got a glass eye?" The witness answered, "Yes, sir; and I have always laid it to his ignorance, and my father told me not to have anything to do with him." There was no objection or exception taken to this testimony. As this bill is qualified and accepted by appellant as being correct, there is nothing in it for revision. The court certifies there was no objection to the testimony that did go before the jury.

Another bill recites that during the argument of the assistant county attorney, Roak, he produced a hatchet and placed the same upon the table in front of him and in the immediate presence of the jury, along side of a gun with which the deceased was killed by the defendant, and in his argument told the jury that the defendant had used said hatchet on the deceased and had chopped her in the head with the same in Kaufman County about two years ago, to which action of the county attorney the defendant then and there objected, and asked a special charge as follows: "You are instructed that you will not, for any purpose, consider the remarks of the counsel for the State wherein counsel for the State speaks of the defendant having chopped the deceased, Naomi Stanton, in the head with a hatchet in the town of Terrell, Texas," which was refused by the court. This bill is qualified as follows: "During the argument Assistant County Attorney Roak did pick up the hatchet, but was instructed by the court to not refer to it, and the court then and there instructed the jury to disregard the statement and action of Mr. Roak in reference to the hatchet." This bill as qualified, we think, shows no reversible error. This bill fails to show whether the hatchet was produced in evidence before the jury or not. If it was in evidence before the jury, of course the assistant county attorney had a right to talk about it, but if it had not been introduced in evidence, of course it would not be permissible for the State's counsel to have it before the jury or discuss it before the jury. It would have no place in the trial, but if it was not introduced, then as the bill is qualified by the judge we are of the opinion it is not of a sufficient injurious nature to require a reversal of the judgment. It seems that immediately upon objection by defendant the court ordered counsel not to use the hatchet and instructed the jury not to consider it. Therefore, we are of opinion that under the circumstances it was not of sufficient gravity to require a reversal of the judgment for this matter alone. The next bill is practically of the same nature and about the same matter.

These are the questions submitted for reversal, except the general allegations that the evidence is not sufficient to support the conviction. As before stated, we deem it unnecessary to take up the details of the homicide and what led to it, but the long course of ill-treatment, cruelty, attacks and assaults on her by the defendant and the attendant circumstances of the homicide were sufficient to authorize the jury to find appellant guilty of murder in the first degree.

Finding no such error in the record as we think would require the court to reverse the judgment, it is ordered that it be affirmed.

*Affirmed.*