## Grat Crockett v. The State.

### No. 2845. Decided November 18, 1903.

**1.—Murder—Evidence—Threats.**

On a trial for murder, to render threats of deceased admissible in evidence, the threat provable in favor of defendant must have been an actual threat made by deceased, or it must have been reported to defendant to have come from deceased as an actual threat. A conditional threat or mere expression of opinion by a third party that it was a threat, is not admissible.

**2.—Same.**

It was inadmissible to prove by a witness that, at night and in the dark, about twenty-five minutes before the homicide, he heard some one say to another, "H. L. (deceased) is going to kill G. C." (defendant). That he did not recognize the parties, but immediately communicated the matter to defendant. Held, the language used did not even show a threat on the part of deceased, and may have been a mere idle surmise of some third party.

**3.—Dying Declarations—Predicate For.**

After deceased was shot, he lived from the 16th of January and died on the 19th of February. From an hour or two after the shooting until his death he continuously said he would die; had his will written; never expressed any hope of life, and while in his right mind, during the second or third week, made a statement of the facts of the homicide. Held, a sufficient predicate to admit the statement in evidence as his dying declaration.

**4.—Murder—Evidence—Charge—Self-Defense.**

On a trial for murder, where the evidence made it an issue as to whether deceased made a demonstration as if to assault defendant with an open knife, the court properly submitted a charge upon self-defense based only upon actual danger as testified by defendant's witnesses. Distinguishing the cases of Phipps v. State, 34 Texas Crim. Rep., 560; Graham v. State, 2 Texas Ct. Rep., 230.

Appeal from the District Court of Kaufman. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Harrison Lewis, on the 16th day of January, 1902, by shooting him with a pistol.

Appellant and deceased, Harrison Lewis, had become mortal enemies from some cause not developed in the record, and they had been threatening and avoiding each other for some time. Deceased was a very dangerous man when under the influence of liquor, and he had made serious threats against defendant; and the evidence was that he was a man likely to carry out his threats when under the influence of liquor. On the day of the killing he came into the town of Forney and drank a good deal that evening. About 8:30 o'clock on the 16th of January, 1902, he was in the saloon of Perrry & McKinney, sitting upon a chair with his back towards the door, talking to Gus Moore, the bartender. He was pretty drunk, and was remarking to Moore that there were "a heap of short sons of bitches in town" that he did not like. Grat Crockett had entered the saloon about this time, and hearing the remark said "Harrison, did you mean that for me?" At this, according to defendant's witnesses, deceased turned round, and, drawing an open knife from his pocket, leaned over and started to advance on appellant, saying in reply, "Yes, God damn you, if you want to take it that way." At which appellant Crockett said, "God damn you, I'll kill you," and immediately drew his pistol and fired four shots rapidly at deceased. Deceased died a week or so afterwards from the effect of the shots received. The State's witnesses said that deceased had no knife, or at least did not draw one and advance on appellant. This, in short, is a very brief statement of the salient facts attendant on the homicide. The State introduced the dying declarations of deceased made to his wife some two weeks after he was shot. She testified: "He told me how the difficulty occurred, and said: 'I was sitting in a chair talking to some men, and that Crockett came in and spoke to him; and as he looked up he saw Crockett was going to shoot him.' He said 'he did not know why the man wanted to shoot him, and that he (Lewis)' did not speak a word to him.' He did not say what Crockett said before the shooting. He said 'Crockett spoke to him and shot him twice while he (Lewis) was still sitting in the chair, and shot him a third time as he was getting up.'"

*Lee R. Stroud,* for appellant, filed an able and elaborate brief.

*Howard Martin,* Assistant Attorney-General, and *J. S. Young,* County Attorney, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifteen years; hence this appeal.

Appellant offered to prove by the witness Gus Ward, that on the night of the homicide, and about twenty-five minutes before it occurred, he was passing the depot in the town of Forney, where the homicide was committed, and heard some one in the dark, addressing another, say: "Harrison Lewis is going to kill Grat Crockett;" that he did not recognize the party speaking or the one addressed, but neither of them was deceased Harrison Lewis; that said Ward immediately communicated this to appellant. This was objected to on the part of the State. Appellant insisted that said testimony was admissible, notwithstanding it did not show a threat made directly by deceased Harrison Lewis against appellant, but it evidenced the fact that the person making the statement must have heard Harrison Lewis make a threat to kill appellant; and that appellant in this connection relied on self-defense, both as against real and apparent danger; and that the testimony would tend to show appellant's state of mind; that is, in connection with previous threats which had been communicated to him this statement rendered him more apprehensive of an attack to be made on him that night by Harrison Lewis; and that subsequently when he met and shot Harrison Lewis he was apprehensive of such attack; and furthermore, if said testimony did not serve to justify him on the ground of self-defense, the evidence would tend to reduce the offense to manslaughter. The court rejected this evidence, and it is assigned as error.

It will be borne in mind that the language here used did not even show a threat on the part of deceased Lewis against appellant, and for aught that appears may have been an idle surmise of some third party. But even concede that it may have operated on apppellant's mind to make him apprehensive, still this would not authorize its admission because many things might have such effect, but it could not be claimed that such matters, on that account, were admissible as evidence. We know of no case in our reports going to the extent of holding this character of evidence admissible. Our decisions seem to be predicated on the idea, at least as to the admission of threats, that a threat provable in favor of appellant must have been an actual threat made by deceased, or it must have been reported to appellant to have come from deceased as an actual threat. Even a conditional threat, or a mere expression of opinion, is not introducable in evidence. Meyers v. State, 33 Texas Crim. Rep., 525. And for other authorities see White's Ann. P. C., sec. 1263.

People v. Rector, 19 Wend., 569, reported in Har. & Thomp. Self-Defense Cases, p. 795, carries this character of evidence further than any decision of which we are aware. That was a case where defendant

kept a bawdy house, and deceased, with two or three others, came there during the night and demanded admission. On their being refused, they used some threats of violence, and manifested determination to enter the premises; and in the difficulty, defendant slew one of the parties with a piece of timber. Defendant, in this connection, offered to show that about a week before there was a riotous breaking of the prisoner's house, and that an inmate had been then badly abused; and that the rioters threatened to return another night soon after and break in if they were not admitted. This testimony was offered to establish a reasonable ground for the prisoner's apprehension of the execution of a similar breaking on the night when the homicide occurred. In that case it did not appear that defendant knew deceased and his companions so far as to have distinguished them from the previous rioters, and the names of these were not put forward in the proposition of the prisoner's counsel. The court below excluded this evidence, but the Supreme Court held that it should have been admitted, stating that it was no reason for the exclusion of same that deceased was not known to defendant as one of the previous rioters; that in the prosecution of a crime, so essentially the creature of intent as murder, everything pertinent should be submitted to the jury upon which they may infer the absence of malice.

But we think the above case can be differentiated from the one at bar. There it was made certain that a previous attempt had been made on appellant's house by rioters, and that they threatened to come again and enter his premises, and appellant had reason to believe they were the same parties who came the second time. In the present case there had been no assault, and although threats were proven to have been made by deceased against appellant and communicated to him, there is nothing in the bill of exceptions reserved to show that the excluded testimony was in anywise connected with deceased, much less did it show any threat attributed to him. As stated above, it may have been a mere idle surmise on the part of the declarant with which deceased had no connection. Neither under our statute, which appears to predicate this character of testimony upon threats attributed by the evidence to deceased, nor upon general principles governing the introduction of threats, do we think this testimony admissible; and the court did not err in rejecting it.

During the trial the State offered the dying declarations of the deceased, through his wife. Her testimony regarding the predicate showed, substantially, that she got to her husband the same night he was shot about 10 o'clock, he having been shot an hour or two before; that she nursed him continuously from that time until he died, which was about a month subsequent; that when she reached her husband, immediately after he was shot, she found him very bad off, and he told her that he would die that night; that he called in a lawyer and had him write his will, making disposition of his property, and told witness what to do about managing the business, etc.; that he never afterwards

up to the time of his death expressed any hope of life, although she tried to encourage him, but would always say he was bound to die; that during the second or third week after he was shot, and while in his right mind, he told her the circumstances under which the killing occurred, which statement was in effect, that deceased was sitting in a chair. in the saloon of Perry & McKinney, in the town of Forney, and that Crockett came in the door, spoke to him, and that he looked up and saw that Crockett was going to shoot him; that he (Lewis) did not speak a word; that Crockett spoke to him, and shot him twice, while he (Lewis) was still sitting in the chair, and shot at him a third time as he was getting up. This was objected to on the part of appellant on the ground that no sufficient predicate was laid. The action of the court admitting the same is assigned as error. It does not occur to us that there was error in this action of the court. Evidently the declarations were made under a consciousness of impending death. Sims v. State, 36 Texas Crim. Rep., 154, 36 S. W. Rep., 256. And the length of time deceased may have lived after making the declaration appears to be immaterial. Fulcher v. State, 28 Texas Crim. App., 465. And for other authorities see 10 Am. and Eng. Enc. of Law, p. 369.

. In connection with this bill·of exceptions, appellant afterwards introduced the testimony of two physicians, who stated that they attended deceased after he was shot, and that on the night of the shooting and during the next day there was great danger of immediate dissolution and death, but after a day or so the patient rested better; and for some days there was no immediate danger; that the patient's pulse was better and he took his meals better, and that he would inquire of them how they thought he was doing; but after the third week blood poisoning set up, and his condition was serious on up until the time he died. He was shot Thursday night, January 16, 1902, and died February 19, 1902. On cross-examination both physicians testified that Harrison Lewis never at any time after he was shot expressed the belief on his part of there being any hope for his recovery. After the introduction of this testimony appellant moved to exclude the evidence of dying · declarations. This the court refused to do, and he assigns this as error. We do not agree with this contention. It does not occur to us that the testimony of the physicians in anywise indicate that the conditions did exist which rendered the testimony inadmissible.

Appellant assigns as error the following portion of the charge of the court: "The jury are instructed in connection with the two last charges, if they believe and find from the evidence before them that the defendant, Grat Crockett, shot the deceased with a pistol and thereby killed him as alleged in the indictment; and further believe from the evidence that at the time he did so, if he did, deceased, Harrison Lewis, was then about to assault defendant with a knife, and if the jury further believe from the evidence that defendant believed and had the right reasonably to believe from the acts of deceased, if any, and from all other circumstances viewed from defendant's standpoint at the time that de-

ceased was about to take his life or to inflict upon him some serious bodily injury, and so believing (if he did) he shot deceased one or more times with a pistol, and thereby killed deceased, believing, if he did, that it was a necessary act to prevent deceased from taking his life or from inflicting upon him some serious bodily injury, then it would be the duty of the jury to find defendant not guilty upon the ground of self-defense."

It will be observed in this connection that the court preceded this charge by properly instructing the jury as to the right of a person to defend himself against apparent as well as real danger, and that a person who is attacked or assaulted by another is not bound to retreat, etc. The objection to the court's charge is, "because the court instructed the jury, if they believed that at the time of the alleged homicide, deceased, Harrison Lewis, was then about to assault defendant with a knife, and if the jury believe from the evidence that defendant believed and had the right reasonably to believe from the acts of deceased, if any, and from all other circumstances, viewed from his standpoint, that deceased was about to take his life or inflict upon him serious bodily injury, that he had the right to kill him." This charge, as appellant contends, deprived him of the right of relying on apparent danger; and he maintains that the evidence showed a case of apparent danger, and at variance with the charge given. We have examined that portion of the charge critically in connection with the statement of facts, and in our opinion it properly presented the case on the issue made by appellant. All of the State's witnesses either prove that there was no demonstration made by deceased at the time of the homicide, or if any was made they did not see it. Those witnesses who testified on behalf of appellant as to the difficulty, with one accord state that deceased drew his knife and opened it and made a demonstration as if to get up from his seat, and advanced toward defendant with his open knife; and the court properly predicated the charge in this regard on the testimony of defendant's witnesses. This is not like the case of Phipps v. State, 34 Texas Crim. Rep., 560; nor is it like the case of Graham v. State, 2 Texas Ct. Rep., 236. In the latter case there was no proof that deceased drew a pistol and presented it at appellant; but the testimony was that he merely made a demonstration as if to draw a pistol; and the error there was that the court predicated his right of self-defense on his actually drawing the pistol, when there was no such evidence. Here, the charge was based on appellant's theory of self-defense.

There being no error in the record, the judgment is affirmed.

*Affirmed.*