**Jerry T. SMITH, Appellant,**

v.

**The STATE of Texas.**

. No. 996–98.

Court of Criminal Appeals of Texas.

June 23, 1999.

Opinion Dissenting to Denial of Rehearing Dec. 15, 1999.

James J. Napper, Lamesa, for appellant.

Sammy M. McCrary, Assistant District Attorney, Lemesa, Matthew Paul, State's Atty., Austin, for the State.

## *O P I N I O N*

HOLLAND, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, and JOHNSON JJ., joined.

A jury convicted appellant, Jerry T. Smith, of murder. TEX. PENAL CODE ANN. § 19.02 (1994). After he plead true to an enhancement allegation, the trial court assessed punishment at life imprisonment. The Court of Appeals affirmed the conviction. *Smith v. State,* 968 S.W.2d 452 (Tex. App.—Amarillo 1998). We granted discretionary review to determine whether the Court of Appeals erred in holding Article 38.36(a) of the Texas Code of Criminal Procedure abrogates the trial court's duty

to comply with Rules of Criminal Evidence 404(b) and 403.[1] We will reverse.

## I.

On June 3, 1993, the victim, Edna Blodgett, disappeared without explanation. The victim's body was never recovered and there was no physical evidence indicating the commission of a criminal offense. A grand jury indicted appellant, the victim's live-in boyfriend, for murder. Before trial, the State notified appellant of its intent to introduce extraneous offense evidence during the guilt phase. The trial court held a pre-trial hearing regarding the admissibility of this evidence.

At the hearing, the State argued that due to the lack of physical evidence linking appellant to the victim's murder, it was essential to its case that the State be allowed to admit evidence showing appellant had physically assaulted his father, his ex-wife, and the victim on numerous occasions. Appellant objected, claiming the State wanted to admit this evidence during the guilt phase to show he acted in conformity with his violent character, and thus committed the crime for which he was on trial which violates Rule 404(b). He further argued that if the evidence was relevant, it should nevertheless be excluded under Rule 403 because it was more prejudicial than probative. The State responded the evidence was submitted to prove appellant's "intent, knowledge, and opportunity in this particular case," not for character conformity purposes. The trial court overruled appellant's objection, but granted appellant's request for an instruction in the jury charge on the limited use of this evidence.[2]

Throughout the guilt-innocence phase of trial, the State called numerous witnesses to testify concerning appellant's physical abuse of the victim. Several neighbors and friends testified they had seen bruises, abrasions, and scratches on the victim's face, arms, and legs. They also testified that the victim feared appellant, particularly when he consumed alcohol. Many indicated they had been concerned about the victim's safety and believed appellant's physical abuse would "wind up" killing her.

Bill Timms, a former Garza County Sheriff's Deputy, testified to several domestic dispute calls made by the victim. He recalled responding to one emergency call in which she claimed appellant had killed her dog. Timms testified that, when he entered the victim's trailer home, he discovered her dog dead and blood on the wall and curtain. Based on the amount and pattern of the blood, Timms opined the dog was kicked and stomped to death. He also testified, that later that same day, he arrested appellant for criminal mischief because he shattered all the mirrors and windows out of the victim's car.[3]

1. Effective March 1, 1998, the Texas Rules of Criminal Evidence and Texas Rules of Civil Evidence were merged to form the Texas Rules of Evidence. Rules 404(b) and 403 of the Rules of Evidence are substantially the same as their predecessors in the Rules of Criminal Evidence. Hence, the scope and application of the new rules would be the same as the old ones. Nevertheless, because this case was tried before the effective date of the new rules, we will apply the former Texas Rules of Criminal Evidence.

2. In the charge, the trial court instructed the jury that the evidence of appellant's extraneous acts of violence could only be considered for the purpose of determining motive, opportunity, intent, preparation, plan, knowledge, or identity, and for no other purpose. The trial court did not give contemporaneous instructions as the evidence was admitted.

3. In addition to appellant's abuse of the victim, the State also introduced evidence showing appellant had a history of physically assaulting his ex-wife and his father. Although on appeal appellant also attacked the admissibility of this evidence over his 404(b) and 403 objections, the Court of Appeals addressed the evidence relating to each individual separately due to the differences in the law. Because the issue currently before us relates only to the Court of Appeal's decision to uphold the trial court's admission of evidence concerning appellant's physical abuse of the victim, our discussion of the facts is limited to that issue.

On appeal, appellant claimed the trial court erred in admitting this evidence over his 404(b) and 403 objections. The Amarillo Court of Appeals disagreed, holding the evidence was admissible under Article 38.36(a), and thus the trial court did not have to observe rules 404(b) and 403.[4] *Smith v. State*, 968 S.W.2d 452, 459–60 (Tex.App.—Amarillo 1998). Relying on Criminal Rule of Evidence 101(c), the court reasoned Article 38.36(a) excuses the State from having to satisfy Rules 404(b) and 403.[5] The court concluded Rule 404(b), which creates a general ban on character evidence, is inconsistent with Article 38.36(a) because it authorizes the State to proffer extraneous offense evidence in a murder case if it involves the relationship between the accused and the victim. *Smith*, 968 S.W.2d at 460. The court also determined Rule 403, which excludes relevant evidence that is substantially more prejudicial than probative, is inconsistent with Article 38.36 because Article 38.36 "makes no allowance for a probative versus prejudicial balancing test." *Id.*

Appellant claims the Court of Appeals erred in holding that Article 38.36(a) overrides Rules 404(b) and 403. He contends this holding conflicts with *Hernandez v. State*, 914 S.W.2d 226 (Tex.App.—Waco, 1996, no pet.), which held that Rules 404(b) and 403 were not abrogated by Article 38.36(a)'s predecessor statute, Section 19.06 of the Texas Penal Code. *Hernandez*, 914 S.W.2d at 232–33. The *Hernandez* court concluded that before a trial court can admit extraneous offense evidence, pursuant to Section 19.06 and over 404(b) and 403 objections, it must find: (1) the evidence relevant to a material issue other than the defendant's character, and (2) the

probative value is not substantially outweighed by its danger of unfair prejudice, confusion of the issues, misleading the jury, by consideration of undue delay, or needless presentation of cumulative evidence. *Id.*

Appellant insists the *Hernandez* opinion is correct because it is based on our reasoning in *Fielder v. State*, 756 S.W.2d 309 (Tex.Crim.App.1988) and *Werner v. State*, 711 S.W.2d 639 (Tex.Crim.App.1986), *modified on other grounds, Hamel v. State*, 916 S.W.2d 491 (Tex.Crim.App.1996). Appellant contends although our reasoning in *Fielder* and *Werner* concerned Article 38.36(a)'s predecessor statute, Section 19.06 of the Penal Code, these decisions are still instructive because the rules are substantively identical.

The State claims the Court of Appeals' opinion does not conflict with *Hernandez* because it concerned Section 19.06, not Article 38.36(a). The State argues Rule of Criminal Evidence 101(c) specifically provides that legislative enactments in the Texas Code of Criminal Procedure take precedence over the evidentiary rules promulgated by the Court of Criminal Appeals, and therefore the Court of Appeals correctly determined Article 38.36(a) abrogates Rules 404(b) and 403. The State insists there is a direct conflict in murder cases because under Article 38.36(a) extraneous bad conduct evidence concerning the relationship of the accused and the victim is admissible, while that same evidence could be inadmissible under Rule 404(b). The State also contends Rule 403 is inconsistent with the Code because it authorizes the exclusion of overly prejudicial relevant evidence, whereas Article 38.36(a) admits "all relevant facts and circumstances sur-

---

**4.** In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX.CODE CRIM. PROC. art. 38.36(a).

**5.** Rule 101(c) provides that the Code of Criminal Procedure controls when there is an inconsistency between the Rules of Criminal Evidence and the Code.

rounding the killing and the previous relationship existing between the accused and the deceased" in murder cases, without regard to its prejudicial nature.

## II.

■ When this Court decided *Werner v. State, supra,*[6] and *Fielder v. State, supra,*[7] what is now Article 38.36(a) was Section 19.06 of the Texas Penal Code. At that time, Section 19.06 was virtually identical to its current version, except that it applied to all prosecutions for manslaughter as well as murder.[8] Since our decisions in these cases, however, the legislature adopted the Rules of Criminal Evidence. Consequently, we did not have the benefit of Rule 101(c) which was the basis for the Court of Appeals's holding in the instant case.

According to Rule 101(c), when a provision from the Code of Criminal Procedure conflicts with a Rule of Evidence, the Code of Criminal Procedure prevails. TEX. R.CRIM. EVID. 101(c). Rule 101(c) also provides, however, that "[w]here possible, inconsistency [between the Code and Rules of Evidence] is to be removed by reason-

able construction." Consequently, in order for this Court to determine whether the Court of Appeals correctly held Article 38.36(a) abrogates Rules 404(b) and 403, we must first determine whether they can be applied congruously.[9] We conclude they can.

The Court of Appeals held Article 38.36(a) abrogates Rule 404(b) because it limits the admissibility of prior bad acts and Rule 403 because it excludes evidence which is substantially more prejudicial than probative. *See Smith,* 968 S.W.2d at 460. This reasoning, however, assumes an evidentiary rule cannot be consistent with a statutory provision when it limits the statute's application. If we were to adopt such a canon of statutory construction, then when an evidentiary rule limits the application of a Code provision, the Code abrogates compliance with the rule without regard to the Legislature's intent and despite Rule 101(c)'s express requirement that the provisions be reasonably construed.

If application of Rules 404(b) and 403 to Article 38.36(a) evidence, however, automatically resulted in the evidence's exclu-

6. In *Werner,* we held although evidence may be admissible under Section 19.06, it must still satisfy the common law rules of evidence. *Werner,* 711 S.W.2d at 643–44. Relying on prior cases in which this Court determined evidence admissible under Article 1257a of the Penal Code, the forerunner of Section 19.06, must satisfy the hearsay rule, we held Section 19.06 did not change, extend, or limit the evidentiary rules.

7. In *Fielder,* we re-affirmed our holding in *Werner,* stating Section 19.06 in no way "broadens or in any way affects the rules of evidence that apply, or the way in which they apply in any given homicide case." *Fielder,* 756 S.W.2d at 318. Accordingly, we held before a trial court may admit Section 19.06 evidence, it must first find the evidence relevant to a material issue other than the defendant's character.

8. Texas Penal Code section 19.06 provided:

In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to

all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

*See* Act of May 28, 1973, 63rd Leg., R.S., ch. 426, 1973 Tex. Gen. Laws 1123, 1124.

9. The courts of appeals disagree as to whether Article 38.36(a) and Rules 404(b) and 403 can be harmoniously applied. *Compare Umoja v. State,* 965 S.W.2d 3, 6–7 (Tex.App.—Fort Worth 1997, no pet.) (Article 38.36(a) does not abrogate State's obligation to provide Rule 404(b) notice of its intend to introduce extraneous offense); *Bush v. State,* 958 S.W.2d 503 (Tex.App.—Fort Worth 1997, no pet.) (Article 38.36(a) does not alter Rule 404(b) prohibition against the admission of extraneous offense evidence to show character conformity); *with Smith v. State,* 968 S.W.2d 452, 459–60 (Tex.App.—Amarillo 1998, pet. granted) (if evidence is admissible under Article 38.36(a), trial court need not observe Rules 404(b) and 403).

sion then there would be no doubt that there is a conflict. Application of Rules 404(b) and 403, however, do not act to automatically bar evidence admissible under Article 38.36(a). Instead, Rule 404(b) prohibits the State from introducing evidence for the sole purpose of showing the accused acted in conformity with his past bad character towards the victim and thus murdered the victim. TEX.R.CRIM. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim.App.1990) (op. on reh'g). The evidence, however, may be admissible for purposes other than character conformity; that is, the trial court may admit past bad acts towards the victim to show the accused's motive, opportunity, intent, preparation, plan, knowledge, or identity. As for Rule 403, it acts to exclude Article 38.36(a) evidence only where the probative value of the evidence is substantially outweighed by unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence.

Harmonizing Article 38.36(a) with Rules 404(b) and 403 is also consistent with Article 38.36's plain language. Although the presence of Rule 101(c) indicates that the Legislature need not incorporate express language in Article 38.36 dispensing with the application of Rules 404(b) and 403, the absence of such language is some indication of the Legislature's intent. In the past, the Legislature has made its intent to dispense with certain evidentiary rules clear through specific language.[10] Also, it is important to note that the Legislature has failed to include language excepting the application of Rules 404(b) and 403 from Article 38.36(a) subsequent to our holding that Section 19.06 evidence must satisfy the rules of evidence to be admissible. *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Crim.App.1992) (when examining amendments to existing legislation the reviewing court must presume the legislature was aware of case law affecting or relating to the statute).

When this Court decided *Werner* and *Fielder*, Section 19.06 was substantially identical to Article 38.36(a). In 1991, the Legislature amended Section 19.06 to add what is now Article 38.36(b) in response to our holding in *Fielder* that expert testimony regarding the accused's state of mind is admissible where the deceased previously committed acts of family violence against the accused.[11] In 1994, the legislature repealed Section 19.06 and re-codified it as Article 38.36 of the Texas Code of Criminal Procedure.[12] At no time during these amendments did the Legislature attempt to overturn our holding that evidence admissible under the statute was still subject to the general rules of evidence. *See e.g., Connolly v. State*, 983 S.W.2d 738 (Tex. Crim.App.1999); *State v. Hall*, 829 S.W.2d 184, 187 (Tex.Crim.App.1992) (prolonged legislative silence following judicial interpretation of statute implies approval of interpretation). If the Legislature intended to exempt Article 38.36(a) from Rules 404(b) and 403, it would have made its intent clear through express language.

---

10. *See e.g.,* TEX.CODE CRIM. PROC. art. 37.07 § 3(a) ("evidence may be offered ... including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, *notwithstanding Rules 404 and 405*, Texas Rules of Criminal Evidence "); TEX.CODE CRIM. PROC. art. 38.37 § 2. ("*notwithstanding Rules 404 and 405*, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child ... shall be admitted").

11. *See* Act of April 17, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex. Gen .Laws 474, 475, repealed by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 7.03, 1993 Tex. Gen. Laws 3764, 3764.

12. *See* Act effective September 1, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex. Gen. Laws 474, 475, repealed by Act effective September 1, 1994, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614.

We also recognize that if it was the legislature's intention to shield evidence admissible under Article 38.36(a) from Rule 404(b)'s general ban against character conformity evidence, or Rule 403's balancing test, it would have been a simple matter for the Legislature to have said so. On the other hand, it is quite a serious matter for this Court to read into the statute something which was omitted by the lawmaking body. *See e.g., Coit v. State*, 808 S.W.2d 473, 475 (Tex.Crim.App. 1991); *Martinez v. State*, 134 Tex.Crim. 180, 114 S.W.2d 874, 878 (1938). Grafting Rule 404(b) and Rule 403 exceptions into Article 38.36(a) is a serious matter because it would not only authorize the admission of character evidence to show the accused murdered the victim, but would also eliminate a trial court's discretion to exclude relevant evidence that is needlessly cumulative, would cause undue delay, result in confusion of the issues, or mislead the jury.

▆▆▆ Because Article 38.36(a) and Rules 404(b) and 403 can be congruously applied as mandated by Rule 101(c), and because grafting an exception into Article 38.36(a) contravenes its plain language, this Court holds evidence admissible under Article 38.36(a) may be nevertheless excluded under Rule 404(b) or Rule 403. Consequently, if a defendant makes timely 404(b) or 403 objections, before a trial court can properly admit the evidence under Article 38.36(a), it must first find the non-character conformity purpose for which it is proffered is relevant to a material issue.[13] If relevant to a material issue, the trial court must then determine whether the evidence should nevertheless be excluded because its probative value is substantially outweighed by the factors in Rule 403.

**13.** The evidence will be relevant to a material issue if the purpose for which the party seeks to have it submitted tends to make "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

Accordingly, we vacate the judgment of the Court of Appeals and remand for that court to conduct proceedings consistent with this opinion.

MANSFIELD, J., dissented without opinion.

KELLER J., filed a concurring and dissenting opinion, in which McCORMICK, P.J. and KEASLER, J., joined.

In the present case, appellant was convicted of the murder of his live-in girlfriend. At trial, the State had offered evidence of previous physical assaults by appellant against his girlfriend. The Court of Appeals held that evidence of appellant's previous physical assaults against the victim was admissible under Texas Code of Criminal Procedure, Article 38.36(a) and that Article 38.36(a) abrogates the trial court's duty to comply with Texas Rules of Criminal Evidence 404(b) and 403. Relying largely upon *Fielder v. State*, 756 S.W.2d 309 (Tex.Crim.App.1988) and *Werner v. State*, 711 S.W.2d 639 (Tex.Crim. App.1986), appellant and the majority contend that Article 38.36(a) does not abrogate a trial court's duty to comply with Rules 404(b) and 403.

### 1. Plain meaning

Article 38.36, entitled "Evidence in Prosecutions for Murder," provides in relevant part:

(a) In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony *as to all relevant facts and circumstances surrounding* the killing and *the previous relationship existing between the accused and the deceased*, together with all relevant facts and circumstances going to show the

evidence." *Rankin v. State*, 974 S.W.2d 707, 719–20 (Tex.Crim.App.1998) (op. on reh'g). What issues are material will depend on the theories of the prosecution and the defense. *See Fielder*, 756 S.W.2d at 318.

condition of the mind of the accused at the time of the offense.

(Emphasis added). Rule 404(b) provides in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

And Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue delay, or needless presentation of cumulative evidence.

In determining the applicability of Article 38.36, we should keep in mind the most basic rule of statutory construction: a statute must be interpreted in accordance with the plain meaning of its words unless the words are ambiguous or the plain meaning leads to absurd results. *Boykin v. State,* 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex. Crim.App.1991). In analyzing the language of a statute, we generally presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *State v. Hardy,* 963 S.W.2d 516, 520 (Tex.Crim.App.1997).

The statutory language outlines three types of admissible evidence: (1) all relevant facts and circumstances surrounding the killing, (2) all relevant facts and circumstances surrounding the previous relationship existing between the accused and the deceased, and (3) all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense. While there is a good deal of overlap between these types of evidence and evidence that is admissible under Rule 404(b), there also appears to be conflict between the rule and the statute. The

third type of evidence under the statute—relating to the condition of mind of the accused—appears to be an "other" (i.e.nonconformity) purpose, which would satisfy Rule 404(b)'s requirements. And the first type of evidence appears to encompass "same transaction contextual evidence," which we have found to be admissible under Rule 404(b) in a limited fashion, although the limited fashion for which the evidence can be used under the rule appears to conflict with the broad statutory language. *See Pondexter v. State,* 942 S.W.2d 577, 583–584 (Tex.Crim.App.1996), *cert. denied,* 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997) (same transaction contextual evidence is admissible only "when the offense would make little or no sense without also bringing in the same transaction evidence"). And the second type of evidence—previous relationship between the parties—appears to conflict with the dictates of Rule 404(b)—at least to the extent that the evidence covers previous violent acts by the defendant against the victim. *See Pavlacka v. State,* 892 S.W.2d 897, 901–902 & 902 n. 5 (Tex.Crim.App. 1994) (previous sexual assaults against the same victim held inadmissible in prosecution for the sexual assault of that victim). This second type of evidence (previous relationship) is the concern of the present case.

"Where possible, inconsistency is to be removed by reasonable construction." Texas Rule of Criminal Evidence 101(c). But when inconsistency cannot be removed, a statute trumps a rule of evidence. Rule 101(c). The question before us is whether the "previous relationship" language in Article 38.36 can be reasonably harmonized with Rules 403 and 404(b). The answer to that question would be easier if the Legislature had included specific language in the statute concerning how the statute should be construed vis a vis those particular rules. For example, in Texas Code of Criminal Procedure, Articles 37.07 and 38.37, the Legislature included language specifically trumping Rules 404 and

405. Article 37.07 § 3(a); Article 38.37 § 2. In the context of privileges, we have held that the Legislature's failure to mention Rule 509 in a Health and Safety Code provision was an indication that the Legislature did *not* intend to override that rule. *State v. Hardy*, 963 S.W.2d 516, 523 (Tex. Crim.App.1997). However, the relevant portions of all three of these statutory provisions were enacted after the adoption of the Texas Rules of Criminal Evidence (the Rules were adopted in 1986). The relevant portion of Article 38.36 was enacted nearly sixty years earlier, in former Article 1257a of the 1927 penal code. *See* Article 1257a (1927); *Werner*, 711 S.W.2d at 643. Because the statute predates the Rules, the absence of a reference to the Rules is of little significance.

In fact, Texas Code of Criminal Procedure, Article 37.071, which predates the Rules, has been held to override Rule 404(b)'s prohibition against the admission of extraneous offenses despite the fact that the statute contains no reference to Rule 404(b). *Kemp v. State*, 846 S.W.2d 289, 307 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993); *Vuong v. State*, 830 S.W.2d 929, 942 (Tex.Crim.App.), *cert. denied*, 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). Although Rule 404(c) of the Texas Rules of Criminal Evidence contains a sentence stating that: "Nothing herein shall limit the provisions of Article 37.071 of the Code of Criminal Procedure," subsection (c) has been dropped from Rule 404 in the new unified rules of evidence.[1] I believe that subsection (c) was dropped because it was deemed to be redundant.

Moreover, this Court is not interpreting the statute from a clean slate. As will be shown below, *Fielder* and *Werner* were only the latest of a number of cases that have interpreted this statutory provision. "When the Legislature meets, after a particular statute has been judicially con-

strued, without changing that statute, we presume the Legislature intended the same construction should continue to be applied to that statute." *Hardy*, 963 S.W.2d at 523 (*quoting Marin v. State*, 891 S.W.2d 267, 271–272 (Tex.Crim.App.1994)). To accurately determine whether the statute does indeed displace the rules, we must examine the historical background relating both to the statute's enactment, reenactments, and changes and to our prior judicial constructions of this provision.

## 2. Historical background

### a. *Common law*

Before Article 1257a was enacted, a long line of decisions existed under the common law that permitted admission into evidence of prior instances of violent conduct by the accused against the deceased in a murder prosecution. Perhaps the most common scenario addressed was that involving prior instances of violent conduct by a husband against his wife; such prior violent acts were uniformly held to be admissible. *Hall v. State*, 31 Tex.Crim. 565, 21 S.W. 368, 368–369 (1893); *Spears v. State*, 41 Tex.Crim. 527, 56 S.W. 347, 348 (1900); *Paschal v. State*, 76 Tex.Crim. 464, 174 S.W. 1057, 1060 (1915). In *Hall*, we quoted Wharton as saying: "On the trial of a husband for the murder of his wife the state has a right to prove a course of ill treatment by the husband of the wife." 21 S.W. at 368 (*quoting* Whart. Crim. Ev. (9th Ed.) § 51). The Court in *Hall* held that the extraneous assaults introduced in that case were admissible to rebut a theory of temporary insanity, to show malice, ill will, and motive, and as explanation for the "real purpose in making the assault alleged." *Id.* In *Paschal*, we held that evidence of prior instances of violent conduct by a husband against his wife were admissible despite the fact that the conduct occurred eight years before the wife's death. 174 S.W. at 1060. Relying upon

---

1. In 1998, the civil and criminal rules were merged to become the Texas Rules of Evidence.

*Hall,* we held that such evidence was "admissible as evidence of a specific intent to kill, to show animus, motive, and malice." *Paschal,* 174 S.W. at 1060.

However, we did not limit this rule strictly to the husband-wife context. We applied the same rule to the murder of a divorced wife, stating: "The long continued ill treatment of the deceased by the appellant, however, was admissible under a long line of cases in this state." *Stanton v. State,* 70 Tex.Crim. 519, 158 S.W. 994, 995 (1913). And, again relying upon *Hall,* we applied the rule in a prosecution for a parent's murder of his child:

> [The evidence of severe whippings] was introduced to show the systematic and cruel treatment was out of all proportion to what would be correct punishment. The evidence, also in this connection, shows that she had sores about her body produced by reason of these severe whippings. This was introducible for the purpose of showing ill will, malice, and cruel treatment on the part of appellant towards his child.

*Betts v. State,* 57 Tex.Crim. 389, 124 S.W. 424, 425 (1909).

### b. *1257a*

Before 1927, criminal homicide was divided into three categories: negligent homicide, manslaughter, and murder. *See* Texas Penal Code Chapters 14, 15, and 16 (1925). Negligent homicide involved death caused by negligence or carelessness where there was an apparent danger of causing death. Texas Penal Code, Articles 1231 and 1232 (1925). Manslaughter involved "voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither excused nor justified by law." Texas Penal Code, Article 1244 (1925). Murder involved the killing of another person with "malice aforethought" and was "distinguishable from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or manslaughter, or which

excuse or justify the homicide." Texas Penal Code, Article 1256 (1925).

In 1927, the Legislature repealed the articles relating to manslaughter. Session Laws, 40th Leg., S.B. 168, § 3, p. 413 (1927). The Legislature deleted "malice aforethought" from the description of the offense of murder, but it created another subsection in the statute requiring the trial court to define malice aforethought in all cases and requiring the trial court to instruct the jury that, in the absence of malice aforethought, the sentence assessed cannot exceed five years. Session Laws, 40th Leg., S.B. 168, § 3a, p. 413; Texas Penal Code, Articles 1256 and 1257b (1927).

In addition, the Legislature added the precursor to Article 38.36, Article 1257a, which provided as follows:

> In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. Provided, however, where punishment assessed by the Jury does not exceed five years, the Defendant shall have the benefits of the suspended sentence act.

Session Laws, 40th Leg., S.B. 168, § 2, p. 413; Texas Penal Code, Article 1257a (1927). The caption of the bill refers to the language adding Article 1257a as "inserting in the Penal Code a new article numbered 1257a relating to what may be proved, and considered by the jury, in determining the punishment to be assessed for murder." Session Laws, 40th Leg., S.B. 168, p. 412. In the emergency provision, the Legislature commented, concerning the bill as a whole, "that this law will define murder so as to enable juries to

more intelligently render verdicts in homicide cases doing away with the necessity of complicated and confusing charges to the jury as to manslaughter." Session Laws, 40th Leg., S.B. 168, § 4, p. 413.

A full understanding of the Legislature's change in the statute requires understanding the meaning of "malice aforethought." Before 1927, both murder and manslaughter required proof of an intent to kill (or constructive proof by showing the use of a deadly weapon *per se*). *Collins v. State,* 108 Tex.Crim. 72, 299 S.W. 403, 405 (1927). Murder required the additional mental element of "malice aforethought" (often referred to simply as "malice"). *Id.* at 404. Malice was traditionally defined as "a state or condition of the mind showing a heart regardless of social duty and fatally bent on mischief." *Id.* Malice has also been defined by what it is not; namely, malice was not present if the crime was committed "under the influence of sudden passion, arising from an adequate cause." *Spearman v. State,* 23 Tex.App. 224, 4 S.W. 586, 587 (1887). In 1931, the Legislature confirmed this negative definition of malice when it passed Article 1257c, which provided that "murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection." Session Laws, 42 Leg., H.B. 760, § 1, p. 94 (1931). In essence, malice was the absence of sudden passion arising from an adequate cause. The crimes of murder and manslaughter were distinguished by the presence or absence of malice.

The 1927 legislation had the effect of changing malice from a guilt-innocence issue to a punishment issue. The presence or absence of malice determined the punishment range for murder. In fact, the law required *instructing the jury* that it

could not assess greater than a five-year sentence absent a finding of malice.

Likewise, Article 1257a was a punishment provision. The facts and circumstances outlined in that article were explicitly circumscribed by the language that those facts and circumstances "may be considered by the jury in determining the punishment to be assessed." From its language, article 1257a could not cover the kinds of evidence that could be used to prove that someone was guilty of murder. But because malice was phrased as a punishment issue, the article could encompass the types of evidence that could be used to show or dispute the existence of malice. And the relevance of such evidence seems readily apparent: the circumstances surrounding the killing, the previous relationship between the parties, and circumstances showing the condition of mind of the accused could all have a bearing on whether the accused acted under the immediate influence of sudden passion arising from an adequate cause. Of course, this type of evidence could also impact the jury's general moral response to the crime in determining the proper number of years to sentence the defendant.

In 1928, we decided the case that became the basis for later pronouncements in *Fielder* and *Werner.* In *Mercer v. State,* 111 Tex.Crim. 657, 13 S.W.2d 689 (1928), the defendant attempted to offer evidence that several people warned him that the deceased was going to kill him. *Id.* at 692. We observed that "the warnings sought to be proved were mere opinions of third parties to the effect that deceased intended to kill" the defendant. *Id.* Relying upon Article 1257a, the defendant complained that the trial court erred in refusing to permit such testimony. *Id.* at 693. We explained that this type of opinion testimony would have been inadmissible before the enactment of 1257a under our decisions in *Crockett v. State,* 45 Tex.Crim. 276, 77 S.W. 4 (Tex.Crim.App.1903) and *Britton v. State,* 107 Tex.Crim. 32, 294 S.W. 541 (1927), and we held that Article

1257a did not supersede the holdings in those cases. *Mercer*, 13 S.W.2d at 693. Both of the cases cited address evidence that was found to be an inadmissible opinion. *Crockett*, 77 S.W. at 5 (statement "may have been a mere idle surmise on the part of the declarant"); *Britton*, 294 S.W. at 543 (trial court did not err in excluding conclusions of the witness concerning the likelihood that the deceased was going to kill the defendant). In a passage that would later be relied upon indirectly in *Werner*, we opined about the effect of the statute upon the rules of evidence:

> There is nothing in the act to indicate that the Legislature was attempting to announce a rule of evidence—and this, notwithstanding the fact that that body was aware of the general principles controlling the admissibility of evidence in the trial of homicide cases as announced in the decisions of this and other jurisdictions. We are not led to believe that the Legislature, acting with knowledge of judicial precedents, would have failed to have expressly extended the rules of evidence in cases of homicide had such been the intention of that body. On the contrary, it seems logical to conclude that it was the legislative intention *to secure to the accused the benefit of the rules of evidence available under the repealed law of manslaughter* respecting the admissibility of relevant facts and circumstances showing the condition of the mind of the accused at the time of the homicide. It follows that reversible error is not manifested.

*Mercer*, 13 S.W.2d at 693 (emphasis added). Although *Mercer* cited the legislative intent to secure benefits to the accused, the language of the statute applied in an equal manner to the accused and the State. Clearly, we referred to the accused because that was the party complaining of error and attempting to justify the admission of evidence under Article 1257a. And, although *Mercer* stated that the Legislature did not "announce a rule of evidence," in light of the phrase concerning the Legislature's intent to "secure" the benefits of

the rules of evidence under the repealed law of manslaughter, we clearly meant that the Legislature did not establish a *new* rule of evidence but codified old rules that had existed when the prior statute was in effect. That conclusion is consistent with the plain language Article 1257a, which outlines what the "State or defendant shall be permitted to offer," and with the caption of S.B. 168, which stated that Article 1257a related to "what may be proved, and considered by the jury."

As previously shown, the rules that existed under the prior manslaughter statute included the common law rule that prior violent conduct by the accused against the same victim was admissible in a prosecution against the accused for the murder of the victim. This prior violent conduct was admissible for a number of reasons, but one of those reasons was that the prior violent conduct showed malice, the distinguishing element between murder and manslaughter under the pre–1927 statute and the new punishment issue under the revised murder statute enacted in 1927. *See Carver v. State*, 510 S.W.2d 349, 354–355 (Tex.Crim.App.1974)(Article 1257a evidence admissible to show malice or the absence of malice). What *Mercer* held was that opinion evidence, which was inadmissible under the pre–1927 statute, remained inadmissible under the 1927 statute.

*Mercer* was subsequently relied upon in *Wiggins v. State*, 115 Tex.Crim. 434, 27 S.W.2d 236 (1930) and *Russell v. State*, 119 Tex.Crim. 469, 45 S.W.2d 622 (1931). Like *Mercer*, *Wiggins* involved a defendant's attempt to offer an inadmissible opinion. 27 S.W.2d at 237. Citing *Mercer*, the *Wiggins* court stated: "It has been expressly held that the enactment in question did not *extend* the rules of evidence." *Id.* at 239 (opinion on motion for rehearing)(emphasis added). In *Russell*, the appellant complained of the trial court's refusal to admit into evidence an out-of-court statement. 45 S.W.2d at 623. We held that the evidence was hearsay and rejected appellant's

contention that Article 1257a made the evidence admissible. *Id.* Citing *Mercer,* we explained:

> In construing this article, we have held that it does not have the effect of *extending* or *broadening* the rules of evidence in homicide cases, but merely *secures* to the accused the benefit of the rules of evidence available under the repealed law of manslaughter.

*Russell,* 45 S.W.2d at 623 (emphasis added). In *Childers v. State,* 150 Tex.Crim. 453, 202 S.W.2d 930 (1947)(opinion on motion for rehearing), we again addressed a defendant's claim that otherwise inadmissible opinion evidence was admissible under Article 1257a. *Id.* at 932 Citing *Wiggins* and *Russell,* we stated that Article 1257a "does not extend the rules of evidence," and we rejected the defendant's contention. *Childers,* 202 S.W.2d at 932–933. And in a subsequent case holding that Article 1257a did not authorize the introduction of hearsay evidence, we stated: "It is well settled, however, that the general rules of evidence were not changed, limited or extended by such statute." *Brooks v. State,* 475 S.W.2d 268, 272 (Tex.Crim.App. 1972) (citing *Wiggins, Childers,* and other cases). *See also Jones v. State,* 515 S.W.2d 126, 129 (Tex.Crim.App.1974) (Article 1257a "does not extend the rules of evidence to make admissible inadmissible hearsay"; citing *Brooks* and *Childers* ).

*Mercer, Wiggins, Russell, Childers, Brooks,* and *Jones* have at least two things in common: (1) all addressed types of evidence that were inadmissible prior to the passage of Article 1257a, and (2) all addressed evidence that was inadmissible on the basis of the form the evidence took rather than its content (either improper opinion or hearsay statements). The inference that can be drawn is that, while Article 1257a permitted the introduction of all facts and circumstances surrounding the previous relationship between the defendant and the accused, the statute did not authorize the introduction of such evidence in an improper form, such as opinion or hearsay testimony.

Because Article 1257a related only to punishment, it did not codify the entire common law doctrine concerning the admissibility of prior offenses against the same victim. For that reason, the common law doctrine still applied to the extent that evidence was offered to prove guilt— although the significance of this distinction was perhaps muted by the fact that Texas conducted unitary trials at the time. *See Carver,* 510 S.W.2d at 354 (bifurcated trial requirement appeared with the advent of the 1965 Code of Criminal Procedure). In two cases decided after *Mercer, Wiggins,* and *Russell,* we relied upon the common law to support the admission of prior violent acts perpetrated by the accused against the victim of the charged offense. In *Steward v. State,* 127 Tex.Crim. 63, 75 S.W.2d 113 (1934), we upheld the admission of evidence that the defendant, the day before his wife's shooting, struck at her twice with an ice pick, threw things at her, threw the dishes out, got a shotgun, and said he was going to kill her. *Id.* at 114. The defendant objected at trial that the transaction in question constituted a separate and distinct offense from the one on trial and was calculated to inflame the minds of the jury against the defendant. *Id.* In upholding the trial court's decision to admit the evidence we cited commentary in Branch's Texas Annotated Penal Code concerning the admissibility of previous troubles between an accused and the deceased: "Antecedent menaces, prior assaults, former grudges, and former quarrels between the parties may be proven to show the state of mind and malice of the accused at the time of the alleged offense, and to establish a motive for its commission." *Steward,* 75 S.W.2d at 114. We found even more important, a subsequent section in the commentary: "When defendant is on trial for the murder of his wife or for an assault with intent to murder her, proof of a course of ill treatment, slights and indignities, or previous as-

saults, and of separation, may be made to prove malice and motive." *Id.* As authority supporting the commentary we cited *Hall. Steward,* 75 S.W.2d at 114.

In *Clark v. State,* 151 Tex.Crim. 383, 208 S.W.2d 637 (1948), we again addressed a parent-child scenario. The defendant was convicted of murder, by whipping his stepson so severely that the boy died of his injuries the next day. *Id.* at 638. Citing our previous decision in *Betts,* we held that evidence that, on prior occasions, the defendant "had whipped the child severely was admissible on the issue of malice and ill will on the part of the appellant towards the child." *Clark,* 208 S.W.2d at 639.

In several other cases, we explored Article 1257a's status as a punishment issue and its potential effect upon the admissibility of evidence relating to guilt. In *Riles v. State,* 141 Tex.Crim. 637, 150 S.W.2d 1043 (1941), *overruled by, Wheeler v. State,* 156 Tex.Crim. 140, 239 S.W.2d 105 (1951), we held that the text of Article 1257a provides a statutory rule of evidence but should not be submitted as a jury instruction. *Id.* at 1044. In support of our holding we observed that the statute applied only to punishment. *Id.* at 1045. We held that limiting evidence of the circumstances outlined in Article 1257a to punishment was an "undue limitation" because such evidence "could also be utilized by the jury when passing upon the whole case." *Id.* We held that the statute should simply operate as a guide to the court in whether to admit such evidence rather than as a jury instruction. *Id.* Apparently, we believed that including the instruction in the jury charge could mislead the jury into believing that they could not also consider this type of evidence for the purpose of determining guilt. Likewise, in *Scott v. State,* 149 Tex.Crim. 4, 190 S.W.2d 828 (1945), *overruled by, Wheeler v. State,* 156 Tex.Crim. 140, 239 S.W.2d 105 (1951), we stated that the statute "is but a rule of evidence enacted by the Legislature as a guide to the court in admitting relevant evidence on whether or not adequate cause

existed at the time of the homicide" and could not be used as a jury instruction. *Id.* at 829–830.

We overruled *Riles* and *Scott* in *Wheeler v. State,* 156 Tex.Crim. 140, 239 S.W.2d 105, 106 (1951). In *Wheeler,* we interpreted *Riles* as construing Article 1257a to limit the evidence it describes to punishment issues. We held that such a construction was in error, and that the evidence outlined in Article 1257a might be admissible for guilt as well as punishment:

The legislature has the authority to prescribe rules of evidence, and if the effect of Article 1257a, Vernon's Ann. P.C., be to *limit the use of testimony* as to facts and circumstances surrounding the killing and the previous relationship existing between the parties *to the question of punishment,* then such testimony could no longer be offered by the state or by the accused on the question of the condition of mind of the accused, on issues going to the question of guilt, such as on the issue of self-defense upon the theory of the appearance of danger; or upon any question other than that of punishment.

We think it clear that the legislature had no such intention, but on the other hand intended, in connection with the submission of malice aforethought and murder without malice, to point out the evidence mentioned as proper for consideration by the jury in arriving at the punishment to be assessed in the event the defendant was found guilty.

*Wheeler,* 239 S.W.2d at 106 (emphasis added). We went on to hold that the text of Article 1257a should be given as a jury instruction. *Id.*

*Wheeler* and the cases it overruled agreed on two propositions relevant here: (1) that the statute itself applied to the punishment determination, and (2) that the types of evidence outlined in the statute could also be relevant to guilt. *Wheeler*'s disagreement with *Riles* and *Scott* appears to center upon their conclusion that Article 1257a was *only* a rule of evidence: "Inso-

far as the Hill, Jamison, Riles and Scott cases hold that the substance of Article 1257a should not .be given in the charge, but should serve *only* as a guide to the court in passing upon the admissibility of testimony, they are, here now, expressly overruled." *Wheeler*, 239 S.W.2d at 106 (emphasis added). Although *Wheeler* held that Article 1257a authorized a jury instruction, that case did not hold that Article 1257a applied only to jury instructions. That is, *Wheeler* did not hold that Article 1257a was not a rule of evidence; it simply held that Article 1257a was not *merely* a rule of evidence. In fact, in subsequent cases we interpreted Article 1257a as being a rule of evidence enabling the admission of extraneous offenses.

In a line of cases after *Wheeler* (but not citing *Wheeler*), we held that previous violent acts by the accused against the victim were admissible under Article 1257a in a prosecution against the accused for the murder of the victim. In *Martin v. State*, 157 Tex.Crim. 210, 248 S.W.2d 126 (1952), the defendant shot and killed the deceased, who was living with the defendant's former wife. *Id.* at 127–128. The trial court admitted evidence of a prior incident, in which appellant fired a bullet into the house of his former wife and the deceased while the deceased was present. *Id.* at 129. The defendant objected that the evidence constituted proof of another offense. *Id.* We held that the evidence was admissible under Article 1257a because the deceased was present on the occasion. *Id.*

In *Firo v. State*, 160 Tex.Crim. 469, 272 S.W.2d 370 (1954), "the assistant county attorney, testifying for the State, stated that the deceased had come to see him on the day of the homicide and that she bore fresh bruise marks." *Id.* at 370. In finding no reversible error, we explained: "Such a statement could have been injurious to the appellant only if the jury believed that the appellant had inflicted the injuries. We think any such injuries, if inflicted by the appellant, would be admis-

sible by virtue of Article 1257a...." *Id.* at 370–371.

In *Stephen v. State*, 163 Tex.Crim. 505, 293 S.W.2d 789 (1956), the accused was convicted of murder without malice and sentenced to two years imprisonment. *Id.* at 789. The defendant complained of the trial court's admission of testimony that, six years prior to the charged offense, the defendant had stabbed the deceased three times. *Id.* at 790. We observed that Article 1257a "authorized proof of the previous relationship existing between the accused and the deceased." *Id.* In response to the defendant's claim that the incident was too remote, we cited our previous decision in *Paschal*, which had held admissible, under the common law, evidence of a violent episode occurring eight years before the victim's death. *Id.*

In *Brown v. State*, 171 Tex.Crim. 320, 349 S.W.2d 722 (1961), the trial court admitted evidence from the defendant's own written statement "showing previous quarrels and threats, and that he had cut the deceased on the wrist with a knife about three months before." *Id.* at 724. Appellant complained that the acts were inflammatory and prejudicial. *Id.* In upholding the trial court, we observed that Article 1257a "authorizes proof of the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the killing." *Id.*(citing *Stephen*).

In *Coleman v. State*, 442 S.W.2d 338 (Tex.Crim.App.1969), the State offered evidence to show that the defendant had previously beaten and choked the deceased (his wife) and that the deceased then left home with their daughter and filed for divorce. *Id.* at 339. Relying in part upon Article 1257a, we held that the evidence was admissible, and we cited our previous decisions in *Brown* and *Steward*. *Coleman*, 442 S.W.2d at 339. We also quoted commentary in Branch's Annotated Penal Code that indicated that prior violent acts

directed against the same victim were exempt from the usual rules against admitting extraneous offenses: "The rule as to the exclusion of other offenses which go to show that the defendant is a bad man generally do not forbid evidence to show that he had made previous assaults against the deceased or injured person, or upon third persons or others where such proof forms a relevant link in the chain of proof of the case on trial." *Id.*

In *Dunlap v. State,* 462 S.W.2d 591 (Tex. Crim.App.1971), the defendant was convicted of assault with intent to murder his wife. *Id.* at 592. The trial court admitted evidence that the defendant had choked his wife on two occasions, and the trial court permitted the State to ask the defendant if he had ever pulled a pistol on her before. *Id.* After observing that there was no difference in the rules of evidence concerning the previous relationship between the parties in a murder or an assault to murder case, we found the evidence to be admissible under Article 1257a. *Id.* We stated that: "Article 1257a, V.A.P.C., provides for the admission of testimony as to all relevant facts and circumstances surrounding a killing and the previous relationship existing between the accused and the deceased. The evidence was admissible. No error is shown." *Id.*

In *Alford v. State,* 505 S.W.2d 813 (Tex. Crim.App.1974), the defendant was convicted of murder with malice by shooting and killing his estranged wife. *Id.* at 814. The trial court admitted evidence that, five months before the killing, the defendant had attempted to choke his wife to death. *Id.* at 815. The defendant complained that the evidence constituted a showing of an extraneous offense that was admissible under no exception to the general rule excluding such matters. *Id.* He argued that the evidence was insufficient to raise an issue of self defense and that the extraneous offense was relevant to no other contested issue. Relying upon *Dunlap,* we held that admission of the evidence was authorized under Article 1257a, "which

provides for the admission of testimony as to all relevant facts and circumstances surrounding a killing and the previous relationship between the accused and the deceased." *Alford,* 505 S.W.2d at 815.

### c. 19.06

In 1974, the modern version of the Texas Penal Code became effective. The term "malice aforethought" was dropped from the language of the code, and the Legislature created, separate from the offense of "murder," an offense entitled "voluntary manslaughter," which was essentially the same offense as murder without malice and the pre–1927 offense of manslaughter. Article 1257a from the old penal code was carried over into § 19.06 of the new code with one very significant alteration—the section no longer contained language limiting its applicability to punishment. § 19.06 provided:

> In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Texas Penal Code § 19.06 (1974). With that change, the Legislature made clear its intent that the types of evidence outlined in former Article 1257a would be admissible at both the guilt and punishment phases of the trial.

This change in the statute, however, did not change the rules of evidence. As previously discussed, the common law already recognized the admissibility of this evidence in relation to the issue of guilt. Moreover, none of the post-*Wheeler* cases construing Article 1257a in the "previous violence against the same victim" context appear to distinguish between the guilt and punishment phases of the trial. And some of those cases provide clues that

would indicate that the evidence was admitted to show guilt. For example, the defendant in *Stephen* was convicted of murder *without* malice and given the lightest sentence of imprisonment possible—two years (having been convicted, he could only have done better by getting a suspended sentence). Hence, punishment would unlikely be considered a significant concern of the defendant's points of error. And in *Alford*, we mentioned the defendant's allegation that self-defense was not an issue and his allegation that the evidence was irrelevant to any other issue. Because the crime in *Alford* was committed in 1972, *see Alford*, 505 S.W.2d at 815, the defendant's trial in that case would have been bifurcated. Alleging that self-defense was not raised would make no sense if the evidence had indeed been introduced at the punishment phase of the trial. Had the defendant made such an obvious blunder in his argument, it would seem likely that we would have mentioned the mistake in our opinion—especially after having mentioned the allegation—instead of simply analyzing the issue under Article 1257a.

In *Shaw v. State*, 530 S.W.2d 838 (Tex. Crim.App.1976), we analyzed the admissibility of evidence of previous violence against the same victim under § 19.06. The defendant was convicted on two counts of murder and sentenced on both to life imprisonment. *Id.* at 839. The victim's nine-year-old son testified, over the defendant's objection, that the defendant would sometimes hit the victim, that he threatened her with his fist, and that once the defendant "was shooting" at her. *Id.* Relying upon § 19.06, we held that the evidence "was admissible to show the condition of the mind of the accused at the time of the offense." *Id.* We also observed that there were "numerous cases holding that such evidence is admissible to show the state of mind at the time of the offense and to establish a motive for its commission." *Id.* at 839–840.

Since the passage of § 19.06, several cases have held that § 19.06, like its predecessor Article 1257a, does not render hearsay evidence admissible. *Fazzino v. State*, 531 S.W.2d 818, 820 (Tex.Crim.App. 1976); *Love v. State*, 581 S.W.2d 679, 681 (Tex.Crim.App.1979); *Allridge v. State*, 762 S.W.2d 146, 153–154 (Tex.Crim.App. 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

In *Werner*, for perhaps the first time, we held evidence to be inadmissible under the statute for lack of relevance. The defendant attempted to introduce into evidence the testimony of a psychiatrist that the defendant's action in killing the victim was a result of Holocaust Syndrome (the defendant was the child of a Holocaust survivor). *Id.* at 641–642. The defendant claimed that this evidence was relevant to substantiate that the killing was done in self-defense. *Id.* at 644. We cited *Wheeler* for the proposition that "the general rules of evidence were not changed or extended or limited" by former Article 1257a. *Werner*, 711 S.W.2d at 643. We also cited *Russell* and *Childers* for the proposition that the statute did not render admissible otherwise inadmissible testimony such as hearsay or improper opinion evidence. *Werner*, 711 S.W.2d at 643. And we cited several other cases for the general proposition that the statute did not override the rule against hearsay. *Id.* at 643–644. We then analyzed the relationship between Holocaust Syndrome and the law of self-defense. *Id.* at 644–646. We found that self-defense had not been raised by the evidence, but even if it had, the evidence was irrelevant to self-defense because self-defense must be viewed from a "reasonable person" perspective and the Holocaust Syndrome evidence would show, at most, that the defendant was not a reasonable person. *Id.* at 644–646.

*Wheeler*, however, did not stand for the proposition cited by *Werner*. Nowhere in *Wheeler* did there appear a statement to the effect that the general rules of evidence were not changed, extended, or lim-

ited by Article 1257a. *See Wheeler, passim.* At most, *Wheeler* could be cited for holding that Article 1257a did not place limits on the admissibility of evidence in the guilt phase of trial by specifying the types of evidence relevant to a punishment determination. Moreover, *Wheeler* was really a jury instruction case, not an evidence case. Nevertheless, the language attributed to *Wheeler* did in fact appear in *Russell* and *Childers,* as well as *Mercer,* upon which those cases were based. And the language employed by *Werner* is literally correct: the rules were not changed, extended, or limited because the Legislature *codified the common law rules that existed at the time.* The Legislature did so initially only as to the punishment issues, but later, the Legislature changed the statute to reflect the common law rules concerning both guilt and punishment. Further, *Werner* was decided in April 1986, and the Rules of Criminal Evidence were not adopted until December of that year. The common law still applied at the time *Werner* was decided, and hence, there as yet existed no variance between the statute and the rules of evidence. *Werner* made not even a single reference to the line of cases holding admissible, under Article 1257a, evidence of previous violent conduct against the same victim, nor did *Werner* even cite (much less overrule) *Shaw,* which construed § 19.06 in like fashion.

And in fact, the evidence in *Werner* was irrelevant to any bases of admissibility contained in § 19.06. Holocaust Syndrome was not a fact or circumstance surrounding the offense or the relationship between the parties. And Holocaust Syndrome did not have any tendency to show more or less probable any condition of mind relevant to the prosecution. Even if the defendant had the Syndrome, it would not have negated a culpable mental state of intent or knowledge required to establish the offense of murder. And, as explained in *Werner,* the Syndrome evidence was not relevant to establish any state of mind involved in the law of self defense.

*Fielder* relied exclusively on *Werner* in analyzing § 19.06. *See Fielder,* 756 S.W.2d at 318. The defendant in *Fielder* attempted to offer expert testimony on what might loosely be called "battered women syndrome." The defendant wanted to introduce evidence concerning the severity of the abuse she had suffered compared to other battered women, the level of fear often produced by such abuse, and testimony concerning the fact that women often stayed in such relationships and the reasons for why that was so. *Id.* at 315–317. We distinguished *Werner* on the ground that the evidence offered in *Fielder* was relevant to explain the relationship between the defendant "*and the deceased.*" *Id.* at 320 (emphasis in original).

In addition to reiterating *Werner*'s conclusion that § 19.06 did not broaden the rules of evidence, *Fielder* also opined that § 19.06 encompassed only two, as opposed to three, types of evidence: (1) all facts and circumstances surrounding the killing which are probative of the material condition of the mind of the accused at the time of the offense, and (2) all facts and circumstances surrounding the previous relationship existing between the accused and the deceased which are probative of the material condition of the mind of the accused at the time of the offense. 756 S.W.2d at 318. Although *Fielder* cited no authority for and gave no reason in support of this construction, the Court may have relied upon the fact that the word "together" precedes the "condition of mind" phrase in holding that the "condition of mind" phrase modifies the other two phrases in the statute. Such an interpretation would emphasize and interpret the language of § 19.06 as follows:

> all relevant facts and circumstances surrounding: (1) the killing and (2) the previous relationship existing between the accused and the deceased, *together with* all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

However, if the Legislature really intended that the condition of mind clause modify the first two types of circumstances, it could have enacted a much simpler paragraph, for example:

all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased tending to show the condition of mind of the accused at the time of the offense.

And, as this simpler paragraph shows, the construction advocated in *Fielder* would render redundant the phrase "all relevant facts and circumstances" that precedes the phrase "going to show the condition of mind of the accused." If the "condition of mind phrase" were simply a modifier of the other portions of the statute, the use of the "all relevant facts and circumstances" phrase *twice* in the statute would seem unnecessary. The conclusion more consistent with the language of the statute is that the "condition of mind" phrase is a separate (i.e.third) circumstance outlined in the statute. *Fielder*'s interpretation of the statute in this regard is *dicta*, as it was unnecessary to the resolution of the case, and we should not continue its erroneous interpretation.

However, even if *Fielder*'s construction of the statute were correct, the resolution of the issue before us would be the same. The cases construing the common law, Article 1257a, and § 19.06 in the context of prior violent acts against the same victim have indicated that such acts are *necessarily* relevant to show malice, ill will, intent, and motive—all of which relate to the condition of mind of the accused at the time of the offense. While "malice" (i.e. "sudden passion arising from an adequate cause") and ill will may arise in only some prosecutions, the issues of intent (or knowledge) and motive are issues that arise in every murder prosecution. And while *Pavlacka* indicated that use of prior violent acts against the same victim to show motive was simply a subterfuge for showing character conformity, rendering the evidence

inadmissible under Rule 404(b), *see Pavlacka*, 892 S.W.2d at 902 n. 5, the common law appears to have contemplated that type of motive evidence.

### d. *38.36*

Effective September 1, 1994, the text of § 19.06 was moved to Article 38.36(a). The only change in the law was the deletion of "voluntary manslaughter" from the provision—a change which reflected the Legislature's abolition of the voluntary manslaughter offense (turning the "sudden passion" issue into a punishment issue in murder prosecutions). However, the Legislature also placed additional provisions in Article 38.36(b):

In a prosecution for murder, if a defendant raises as a defense a justification provided by Section 9.31, 9.32, or 9.33 Penal Code, the defendant, in order to establish the defendant's reasonable belief that use of force or deadly force was immediately necessary, shall be permitted to offer:

(1) relevant evidence that the defendant had been the victim of acts of family violence committed by the deceased, as family violence is defined by Section 71.01, Family Code; and

(2) relevant expert testimony regarding the condition of the mind of the defendant at the time of the offense, including those relevant facts and circumstances relating to family violence that are the basis of the expert's opinion.

These additional provisions are clearly evidentiary rules for use in a murder prosecution. That the Legislature would place such provisions into the same article as the text from former § 19.06 is some indication that the Legislature believed that § 19.06 embodied a viable rule of evidence for murder prosecutions. Moreover, the placement of the former § 19.06 text in an article within Chapter 38 of the Code of Criminal Procedure is evidence that the Legislature believed and intended that the statute established a rule of evidence that would control over court-made rules of

evidence as do other statutes contained in that chapter.

### 3. Conclusion

Article 38.36 is a codification of the common law concerning the admissibility of certain types of evidence based upon subject matter. When we adopted the Rules of Criminal Evidence, we enacted some rules that were at variance with common law doctrines. But, by codifying the common law, the Legislature set in stone certain principles of evidence, as they related to murder prosecutions, that could not later be changed by judicial rule-making. One of the common law doctrines codified by the statute is the doctrine that instances of previous violent conduct by the accused against the victim of the charged offense are admissible. Such instances of conduct constitute "facts and circumstances surrounding the previous relationship between the accused and the deceased," and those circumstances are relevant even though such relevance may be due to their tendency to show character conformity. Rule 404(b), and our holding in *Pavlacka*, irreconcilably conflicts with the statute, and hence the statute, not the rule, should control.

On the other hand, the rules against hearsay, and other rules relating to the proper form in which evidence must be admitted, are not affected by Article 38.36. The statute was intended only to address the admissibility of evidence by its subject matter. Hence, while evidence of previous violent acts of the accused against the victim is, in my opinion, admissible under Article 38.36, such evidence must still be admitted in proper form. Evidence of previous violent conduct could not, for instance, be admitted via hearsay statements unless they conformed to an exception contained within the hearsay rules.

I would hold that Rule 403 is also still applicable. That rule often embodies concerns that are unrelated to the subject matter of the evidence. For instance, evidence may be needlessly cumulative, in which case it would be subject to exclusion even though the evidence would otherwise be admissible. Of course, courts would take into account the broader rule of admissibility established by Article 38.36 in determining whether evidence is unfairly prejudicial. The subject matter of evidence properly admitted under Article 38.36 would be unlikely to provide grounds for finding unfair prejudice. However, evidence that produces a highly prejudicial effect that is unrelated to the subject matter sanctioned by the statute could be excludable under Rule 403. *See Mosley v. State*, 983 S.W.2d 249, 262 (Tex.Crim.App. 1998).

I concur with the majority's decision to remand the case to the Court of Appeals to conduct an analysis under Rule 403. I dissent to the majority's decision to remand the case for an analysis under Rule 404(b).

McCORMICK, P.J., delivered a dissenting opinion to denial of state's motion for rehearing, in which MANSFIELD, KELLER and KEASLER, JJ., joined.

I respectfully dissent to the Court's denial of the State's motion for rehearing. The Court's opinion on original submission "harmonizes" Article 38.36 and Rule 404(b) by deciding that "relationship" evidence admissible under Article 38.36 is subject to and may still be excluded by Rule 404(b).

This construction, however, does not "harmonize" Article 38.36 and Rule 404(b). It renders Article 38.36 meaningless. Under the Court's opinion on original submission Rule 404(b) governs the admissibility of "relationship" evidence because there is no point for a party to rely on or to offer this evidence under Article 38.36. This would be a pointless exercise. Article 38.36 has no practical significance in determining the admissibility of "relationship" evidence.

The Court's opinion on original submission perceives an inconsistency where none

exists. It mistakenly believes that an inconsistency exists between Article 38.36 and Rule 404(b). Having decided that this inconsistency exists, the Court's opinion on original submission, therefore, finds it necessary to remove this inconsistency by "reasonable construction" under Rule 101(c).

But there is no inconsistency between Article 38.36 and Rule 404(b). Article 38.36 categorically deems "relationship" evidence to have relevance apart from character conformity for Rule 404(b) purposes. This does not make Article 38.36 and Rule 404(b) inconsistent. At most Article 38.36 creates an "exception" to, not an inconsistency with, Rule 404(b). An exception is not synonymous with inconsistency. The only reasonable construction in this case would be to follow the "plain" language of Article 38.36.

I respectfully dissent.

MANSFIELD, KELLER and KEASLER, JJ., join this dissent.