COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-365-CR
 
 
RYAN ANTHONY SOTO                                                         APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM CRIMINAL DISTRICT COURT 
NO. 4 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        A 
jury convicted Appellant Ryan Anthony Soto of attempted capital murder, and the 
trial court sentenced him to twenty-four years’ confinement in the 
Institutional Division of the Texas Department of Criminal Justice.  
Appellant brings three points on appeal, arguing that the trial court committed 
reversible error (1) in admitting testimony during the guilt-innocence phase of 
extraneous assaults against the complainant and the complainant’s mother and 
(2) in accepting the jury’s finding that a deadly weapon was used in the 
commission of the offense.  Because we hold that the trial court did not 
err, we affirm the trial court’s judgment.
Background 
Facts
        In 
April 2002, Appellant was living with his girlfriend, LaNelle Shope, and her 
fifteen-month-old son, Hayden, the complainant.  On April 28, 2002, 
Appellant took Hayden into the bedroom to change his diaper and to try to get 
him to go to sleep.  When Shope noticed that it had gotten quiet in the 
bedroom, she went in to check on Appellant and her son.  Appellant and 
Hayden were on the bed.  Appellant was straddling the child.  Hayden 
had turned blue, and his eyes were rolled back in his head.  Shope 
testified that she saw a pillow get tossed from the bed onto the floor when she 
entered the room.
        Shope 
grabbed her son up from the bed and went to call 911.  Appellant grabbed 
the phone from her and broke it, so Shope went outside and used an emergency 
phone to call 911.  The two officers who arrived at the scene both 
testified that the complainant was bluish with his eyes rolled back in his head 
and that his breathing was shallow and unresponsive.  The officers also 
testified that Shope was screaming that Appellant had tried to kill her baby.
        Appellant 
was arrested while the complainant was being transported to the hospital, where 
he was treated and later released.  Dr. Jayme Coffman, testifying for the 
State, stated that the complainant’s coloration, eye rolling, and cessation of 
breathing indicated suffocation, and that, in her opinion, a pillow placed and 
held down over a child’s face could be a deadly weapon.
        Shope 
also testified to two prior instances of violence by Appellant, one resulting in 
Appellant hitting Shope and the other involving Appellant hitting the 
complainant because he was crying and would not stop.
Extraneous 
Offenses
        In 
his first point, Appellant argues that the trial court erred in admitting an 
extraneous offense that Appellant committed against Shope, the complainant’s 
mother.  In his second point, Appellant argues that the trial erred in 
admitting evidence of his prior assault against the complainant, Hayden.
        We 
review the trial court’s admission of evidence under an abuse of discretion 
standard.[1]  If the trial court’s decision to 
admit the evidence lies within the zone of reasonable disagreement, then the 
decision must be upheld.[2]  In situations such 
as this, we will affirm the decision of the trial court if there is any valid 
ground upon which the decision could have been made.[3]  
Article 38.36 of the Texas Code of Criminal Procedure provides, in relevant 
part:
  
(a) In all prosecutions for murder, the state or the defendant shall be 
permitted to offer testimony as to all relevant facts and circumstances 
surrounding the killing and the previous relationship existing between the 
accused and the deceased, together with all relevant facts and circumstances 
going to show the condition of the mind of the accused at the time of the 
offense.[4]
 
 
“Former Texas Penal Code 
section 19.06 was virtually identical to Article 38.36(a).”[5]  
Former section 19.06 applied to capital murder prosecutions.[6]  
It also applied to attempted murder prosecutions.[7] 
Consequently, we hold that article 38.36(a) applies to attempted capital murder 
prosecutions.
        Evidence 
admitted under article 38.36 is still subject to the extraneous offense rules of 
403 and 404(b).[8]  That is, extraneous offense 
evidence is inadmissible if offered solely to prove character conformity or if 
it is unduly prejudicial.[9]  If, however, the 
evidence is offered for the purpose of showing and does show the relationship 
between the parties, the evidence is admissible under rule 38.36 unless it is 
unduly prejudicial.[10]  Rule 404(b) provides:
  
Evidence of other crimes, wrongs or acts is not admissible to prove the 
character of a person in order to show action in conformity therewith.  It 
may, however, be admissible for other purposes, such as proof of motive, 
opportunity, intent, preparation, plan, knowledge, identity, or absence of 
mistake or accident.[11]
  
 
        The 
State offered the evidence of the prior assault on the complainant for purposes 
of motive and intent.  The trial court admitted the evidence over 
Appellant’s objections.  The trial court stated, out of the presence of 
the jury, “I’m going to allow the reaction to the crying.  That you 
said how he acted on that.  I am also going to allow what she identified as 
a mark, him crying.”  On appeal, the State argues that the admission of 
the evidence is within the zone of reasonable disagreement to show Appellant’s 
intent, motive, and state of mind in commission of the offense at bar.  The 
State argues that “the prior incident shows the Appellant’s inability to 
control his response to the baby’s crying and his intent to use physical means 
to stop it.”
        The 
evidence that Appellant complains of regarding Shope is that Appellant hit her 
because she wanted to let Hayden sleep with them when he woke up in the middle 
of the night and was crying.  The trial court admitted the evidence 
apparently for the purposes for which it was offered—to show motive and 
intent.  On appeal, the State argues that this evidence shows Appellant’s 
“hostile response when Hayden’s wants and needs were put ahead of his own 
wants and needs.”  The State also argues that this evidence shows 
Appellant’s “intent, motive, and state of mind in attempting to suffocate 
Hayden with a pillow when he would not stop crying.”
        The 
State’s argument regarding the admission of the extraneous offenses is 
extremely close to an argument that the State should be allowed to show the 
prior relationship of the parties.[12]  We note 
that article 38.36 and rule 404(b) are both limited internally to relevant 
evidence.[13]  Evidence is relevant if it has 
“any tendency to make the existence of any fact that is of consequence to the 
determination of the action more probable or less probable than it would be 
without the evidence.”[14]  Neither article 
38.36 nor rule 404(b) permits evidence of extraneous acts of misconduct to prove 
mere character conformity.
        As 
the State points out, Appellant had a limited history of overreacting to 
Hayden’s crying.  On one occasion, he struck him.  On another 
occasion, he struck Hayden’s mother because she insisted on placing the child 
in the bed with them when the child awoke and cried.  We conclude that this 
evidence is relevant under rule 404(b) as evidence of Appellant’s pattern or 
course of conduct, intent, and lack of accident.[15]  
We further conclude that the evidence is relevant under article 38.36 as 
evidence of the relationship of Appellant and Hayden or of Appellant’s state 
of mind at the time of the offense.[16]
        Rule 
403 provides that even relevant evidence “may be excluded if its probative 
value is substantially outweighed by the danger of unfair prejudice.”[17]  As the State points out, it is not mere prejudice 
that will render the evidence inadmissible.  It is doubtful that the State 
would offer evidence that did not in some way prejudice a defendant in a 
criminal case.  The question is whether the admission of the evidence is unfairly 
prejudicial.  Evidence is unfairly prejudicial if it inflames and 
prejudices the jury to the point that it creates an undue tendency to suggest a 
verdict on an improper basis, such as an emotional basis.[18]  
The rule favors admissibility over exclusion.[19]  
Factors that trial courts should consider in the rule 403 balancing test 
include:
  
(1) how compellingly the extraneous offense evidence serves to make a fact of 
consequence more or less probable—a factor which is related to the strength of 
the evidence presented by the proponent to show the defendant in fact committed 
the extraneous offense;
 
(2) the potential the other 
offense evidence has to impress the jury “in some irrational but nevertheless 
indelible way”;
 
(3) the time the proponent 
will need to develop the evidence, during which the jury will be distracted from 
consideration of the indicted offense;
 
(4) the force of the 
proponent's need for this evidence to prove a fact of consequence, i.e., does 
the proponent have other probative evidence available to him to help establish 
this fact, and is this fact related to an issue in dispute.[20]
  
        In 
the case now before this court, there was no direct evidence of the manner and 
means of attempting to cause Hayden’s death.  There was no evidence that 
the child was struck.  There were no broken bones.  There were no 
signs of scalding.  The only thing Shope saw was a pillow being tossed onto 
the floor.  The medical evidence was that the child’s symptoms were 
consistent with being smothered.  Smothering, however, can be 
accidental.  The State needed the evidence of the extraneous offenses, 
which took little time to develop and had little likelihood of impressing a jury 
in an irrational way, to show Appellant’s intent and to show that the 
complainant’s injury was not the result of an accident.  The evidence of 
the extraneous offenses showed specifically that Appellant had demonstrated in 
the past an intent to injure the child, and he had shown a willingness to injure 
the mother when she tried to protect the child when he was crying.  Based 
on the appropriate factors,[21] we hold that the 
evidence’s probative value is not substantially outweighed by the danger of 
unfair prejudice.  Because the admission of the evidence was permissible 
under rules 403 and 404(b), as well as article 38.36, the trial court did not 
abuse its discretion in admitting the evidence.  We overrule Appellant’s 
first and second points.
Deadly Weapon 
Finding
        In 
his third point, Appellant argues that the evidence is legally insufficient to 
establish that the pillow used to smother Hayden was a deadly weapon.  A 
deadly weapon means anything that in the manner of its use or intended use is 
capable of causing death or serious bodily injury.[22]
        Police 
officer Brent Hudson testified that, as the State theorized the pillow was used, 
it was a deadly weapon.  Dr. Jayme Coffman testified that a pillow, if used 
as the State theorized it was used, was a deadly weapon.
        Appellant 
argues that because neither was provided the definition of a deadly weapon, 
their evidence was insufficient to establish that the pillow was a deadly 
weapon, as the standard each used in making his or her determination is 
unknown.  Appellant points to the fact that Hayden did not die as a result 
of being smothered with a pillow.  Although a police officer testified that 
he felt like the child was close to death, Appellant argues that there was no 
competent medical evidence that Hayden suffered serious bodily injury.
        The 
evidence shows that Hayden was a purple-blue color and limp, and his eyes had 
rolled back.  Dr. Coffman testified that Hayden’s bluish color, his 
rolled-back eyes, and the cessation of breathing indicated suffocation.  
The only evidence that Hayden had stopped breathing was his mother’s testimony 
that she could not tell whether he was breathing.  Dr. Coffman testified 
that the description of Hayden’s condition was consistent with 
suffocation.  It is common knowledge that suffocation, if it lasts long 
enough, may cause death.  No expert testimony is necessary to prove this 
fact, just as no expert testimony is necessary to prove that drowning can cause 
death.  Admittedly, these two deadly acts are exceptions to the general 
requirement that expert testimony is required.
        Applying 
the appropriate standard of review for legal sufficiency,[23] 
we hold that the evidence is legally sufficient to support the jury’s finding 
that the pillow used in the case now before this court was, in the manner of its 
use and intended use, capable of causing death and serious bodily injury and 
that the pillow, therefore, was a deadly weapon.  We overrule Appellant’s 
third point.
Conclusion
        Having 
overruled Appellant’s three points, we affirm the trial court’s judgment.
 
  
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
   
 
PANEL A:   CAYCE, 
C.J.; DAUPHINOT and GARDNER, JJ.
 
PUBLISH
 
DELIVERED: January 6, 2005

NOTES
  
1.  Montgomery v. State, 810 S.W.2d 372, 391 (Tex. 
Crim. App. 1991) (op. on reh’g).
2.  Id. 
at 391; Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. 
on reh’g).
3.  State 
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).
4.  Tex. Code Crim. Proc. Ann. art. 38.36 
(Vernon Supp. 2004-05).
5.  Ex 
parte Varelas, 45 S.W.3d 627, 649 (Tex. Crim. App. 2001) (Holland, J., 
concurring op. to den. of State’s mot. for reh’g).
6.  Lamb 
v. State, 680 S.W.2d 11, 16-17 (Tex. Crim. App. 1984), cert. denied, 
470 U.S. 1009 (1985).
7.  Hall 
v. State, 640 S.W.2d 307, 309 (Tex. Crim. App. 1982).
8.  Smith 
v. State, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999).
9.  Tex. R. Evid. 403, 404(b).
10.  Smith, 
5 S.W.3d at 679.
11.  Tex. R. Evid. 404(b).
12.  See 
Tex. Code Crim. Proc. Ann. art. 
38.36.
13.  Tex. R. Evid. 404(b); Tex. Code Crim. Proc. Ann. art. 38.36.
14.  Tex. R. Evid. 401; Rankin, 974 
S.W.2d at 718.
15.  See 
Tex. R. Evid. 404(b).
16.  See 
Tex. Code Crim. Proc. Ann. art. 
38.36.
17.  Tex. R. Evid. 403.
18.  Montgomery, 
810 S.W.2d at 378.
19.  Id. 
at 389.
20.  Santellan 
v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (footnote omitted) 
(quoting Montgomery, 810 S.W.2d at 389-90).
21.  Santellan, 
939 S.W.2d at 169.
22.  Tex. Penal Code Ann. § 1.07(a)(17)(B) 
(Vernon Supp. 2004-05).
23.  See 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden 
v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Dewberry v. State, 
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).