

# NUMBER 13-10-00374-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**CESAR CELESTINO TREJO,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes**
**Memorandum Opinion by Justice Benavides**

This is an appeal from a murder conviction.   *See* TEX. PEN. CODE ANN. § 19.02 (West 2011).   By three issues, appellant, Cesar Celestino Trejo, contends the trial court erred in admitting:  (1) documents from a battered women's shelter and a medical hospital in violation of Trejo's Sixth Amendment confrontation clause rights, and (2)

testimony and documentary evidence alleging Trejo raped the decedent and violated a protective order a week before her death. Trejo also contends that (3) his trial counsel was ineffective in failing to properly object and secure rulings on multiple constitutional errors during the trial. We affirm.

## I. BACKGROUND

According to the evidence adduced at trial, on July 19, 2008, Mariana Tijerina and her four children were at their apartment preparing to drop off Tijerina's eldest daughter, M.B.,[1] at a slumber party. Tijerina had been separated from her common-law husband, Trejo, for two months and had previously sought a protective order against him. Trejo unexpectedly appeared at her home and asked for a ride to his grandparents' home. Tijerina agreed. She and the children got into her van with Trejo taking the wheel, as the driver.

Trejo drove everyone to his mobile home unit in Alamo, Texas instead of his grandparents' home. Trejo then asked if he could talk to Tijerina, but Tijerina refused, and said that she needed to take M.B. to the party. Trejo became upset and pulled at Tijerina's arm and legs to get her out of the van. He eventually succeeded in removing her from the van and took her to the backyard, where they began arguing.

At trial, M.B. testified that she could see Trejo "pointing everywhere" while he and her mother argued. At one fateful point, M.B. saw Trejo push her mother to the ground, pull a silver handgun from his pocket, and shoot Tijerina in the heart and the back. M.B. testified that she and one of her brothers immediately jumped out of the van to attempt to help their mother, but Trejo threatened them to "get back in the van, or I'll

---

[1] Because M.B. is a minor, we will use her initials to protect her identity.

shoot all of y'all." The children, crying, returned to the van and Trejo drove them to his grandparents' house. At the grandparents' house, Trejo's step-grandfather, Francisco Hernandez, asked why the children were crying. Trejo allegedly responded, "I did something. I killed [Tijerina]." He fled the scene, but was eventually found and arrested for murder.

During trial, the State offered evidence that Tijerina had visited a local shelter for battered women, Mujeres Unidas, one week before her death. While speaking to a shelter representative, Tijerina reported that Trejo had violated a previously-issued protective order and raped her. Tijerina also told this to a sexual assault nurse examiner (SANE), who medically examined Tijerina the next day at McAllen Medical Center. Trejo's counsel objected to this evidence, arguing that it violated Trejo's Sixth Amendment right to confront his accuser as to all charges. *See* U.S. CONST. amend. VI. The trial court overruled this objection, stating that Trejo "had something to do as to why (Tijerina) can't come in. She's dead." Trejo's counsel also objected that the evidence was hearsay and violated Texas Rule of Evidence 403. *See* TEX. R. EVID. 801, 403. The trial court overruled these objections.

A jury convicted Trejo of murder and sentenced him to ninety-nine years in the Texas Department of Criminal Justice—Institutional Division. *See* TEX. PENAL CODE ANN. § 12.32 (West 2011). This appeal ensued.

## II. THE CONFRONTATION CLAUSE

By his first issue, Trejo argues that the trial court erred in admitting the testimony and notes of the Mujeres Unidas employee and the SANE regarding Trejo's alleged rape

of Tijerina one week prior to her death.   Trejo contends the admission of this evidence violated his Sixth Amendment "Confrontation Clause" right.

## A.      Applicable Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."   See U.S. CONST. amend. VI.   This right is known as the "Confrontation Clause."   *Id.*   "The amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination."   *Giles v. California*, 554 U.S. 353, 358 (2008).    If the witness is unavailable, her prior testimony "will be introduced only if the defendant had a prior opportunity to cross-examine" her, with two exceptions.   *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).   The exceptions to the confrontation clause are dying declarations, where the declarant makes a statement while on the verge of death, and forfeiture by wrongdoing, which allows the admission of statements of a witness who "was detained or kept away by the means or procurement of the defendant."   *Id.* at 358–59 (internal quotations omitted).

The threshold question for possible Confrontation Clause violations is whether a statement is testimonial or non-testimonial.   *See Crawford*, 541 U.S. at 68.   Whether a statement is testimonial or non-testimonial hinges on the primary purpose of the interrogation.   *Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011).   This is a relative inquiry that depends on the circumstances surrounding the statements.   *Id.* (noting that when and where the statement occurs can affect its status as "testimonial").    When the primary purpose is something other than criminal investigation, "the Confrontation Clause does not require such statements to be subject to the crucible of

4

cross-examination." *Id.* at 1157. Generally speaking, statements made for the purpose of medical diagnosis or treatment have a primary purpose other than the pursuit of a criminal investigation. *See id.* at 1157 n.9. However, a statement is testimonial when the circumstances indicate that the interviewer's primary purpose was to establish past events to further a criminal prosecution. *See De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

If the statement is testimonial, it is not admissible unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine. *See id.*; *Coronado v. State*, 351 S.W.3d 315, 322 (Tex. Crim. App. 2011). If the statement is non-testimonial, admitting the statement does not violate the Confrontation Clause. Whether a statement is testimonial or non-testimonial is a question of law which we review de novo. *See Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

**B.     Discussion**

Trejo objected to the admission of the handwritten counseling notes of a shelter representative, dated July 10, 2008—approximately one week before Tijerina's death:

> Client was at home taking a shower when her ex-boyfriend (common law) arrived and daughter opened the door for him. She [Tijerina] currently has a protective order against him. She stated she was still in the shower when he came in the bathroom. Client was scared and did what he told her. Client said he became very aggressive. He sexually assaulted her and stayed all night until the following day. Client said he told her not to report it because he would go after her family. . . . Client said she would want to come in for counseling.

Trejo also complained that a report from a SANE at McAllen Medical Center was improperly admitted into evidence. The report indicates that Tijerina was examined on July 11, 2008 for signs of sexual assault after she reported that Trejo raped her.

5

To begin our analysis of Trejo's Sixth Amendment complaint, we must first decide whether the Mujeres Unidas notes and the SANE report were testimonial or non-testimonial. *See Crawford*, 541 U.S. at 68. Trejo attempts to cast the Mujeres Unidas report as testimonial by arguing that it shows: (1) that Tijerina's "type of victimization" was sexual assault; (2) that law enforcement was contacted, which led to a subsequent protective order and police report; and (3) that the report included documents entitled "Offender Information" and "Registration for Services—Offender Information." Although we recognize that law enforcement was contacted following Tijerina's visit to Mujeres Unidas, we hold that a criminal investigation was not the "primary purpose" of the center's inquiry. The center's "primary purpose" was to treat Tijerina, both physically and emotionally, after being sexually assaulted. *See Michigan*, 131 S. Ct. at 1156. Medical records made for the purposes of treatment are non-testimonial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009). Further, statements made for the purpose of medical treatment do not have to be made to a medical professional, per se. *See Horner v. State*, 129 S.W.2d 210, 219 (Tex. App.—Corpus Christi 2004, pet. ref'd). As such, we hold that the Mujeres Unidas notes were non-testimonial.

Trejo similarly tries to characterize the SANE report as "testimonial" because the nurse used a rape kit to collect evidence for investigatory purposes. Trejo further points out that Tijerina consented to give the results of her examination to police. Again, we conclude that the "primary purpose" of the SANE examination was to medically treat Tijerina. *Id.*; *see Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd) (finding that the object of a SANE is to ascertain whether the victim has been

sexually abused and whether further medical attention is warranted). Accordingly, because we hold that these proffered pieces of evidence were non-testimonial, they did not implicate Trejo's Sixth Amendment rights. See U.S. CONST. amend. VI. We overrule Trejo's first issue.

### III. THE ADMISSION OF EVIDENCE

By his second issue, Trejo contends that the trial court erred when it allowed "extensive 404(b) testimony because the probative value of the testimony was substantially outweighed by the prejudicial effect." The rule 404(b) evidence about which he complains is Trejo's alleged rape of Tijerina one week before her murder.

### A. Standard of Review and Applicable Law

Texas Rule of Evidence 404(b) provides as follows:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b). The State, however, argued that this evidence was admissible under article 38.36 of the Texas Code of Criminal Procedure, which establishes that:

> in all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased. . . .

See TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (West 2005). Trejo countered that the evidence regarding Tijerina's visit to the Mujeres Unidas shelter should have been excluded because its probative value was substantially outweighed by the danger of

7

unfair prejudice.   See TEX. R. EVID. 403.

The admission and exclusion of evidence is within the trial court's sound discretion.   *Moses v. State*, 105 S.W.3d 622, 627 (Tex. 2003).   We will not challenge a trial court's ruling on the admission of evidence as long as it is within the zone of reasonable disagreement.   *Id.* ("That is to say, as long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court should affirm"); *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. 1991).   In murder cases, "if a defendant makes timely 404(b) or 403 objections, before a trial court can properly admit the evidence under Article 38.36(a), it must first find the non-character conformity purpose for which it is proffered is relevant to a material issue."   *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999).

## B.    Discussion

Trejo contends that "the introduction of [the] prior protective order and the allegations of rape were unwarranted and highly prejudicial."   He argues that "there was never any question at trial the [Trejo] shot [Tijerina].   The entire case rested on whether it was manslaughter or murder. . . .the only motive for including such evidence was to show [Trejo] had a propensity for violence and acted in conformity therewith."

During trial, counsel objected that the evidence regarding Tijerina's visit to Mujeres Unidas, the local shelter for abused women and children, violated Texas Rule of Evidence 403:

> THE COURT:      And your objection is that it is only prejudicial?
>
> COUNSEL:      Yes, Your Honor.
>
> THE COURT:      All right.   That objection is overruled.   The Court will allow that only because it is a homicide case . . . and

8

the jury is entitled to know under that instruction of the previous relationship, and this is not 1, 2, 3, 5, 10 years before. This is like a week, within a week, before there were issues. Any additional objections?

COUNSEL: Judge, even though it is an assault, it is a different type of assault. We are here, again, on a murder case. My objection was under 404(b), Judge, and if I can get a ruling from the Court, then I will proceed to—if that's going to be overruled, Judge, 403—I mean, 404(b).

THE COURT: The objection is overruled.

COUNSEL: Judge, I also need a ruling on their 401, Judge that it is not relevant.

THE COURT: The court is going to overrule the objection. The Court is allowing it because it is a homicide case, because under that article, the Court is supposed to allow the previous relationship of the parties and this apparently goes to that, it's right on point on that relationship. I mean, tell me, I will do a balancing test, you know, but this happened in a very short period of time. Obviously, if it would have been remote in time, if it would have been several years ago, the weighing test I would say the prejudicial effect outweighs the probative value, but I think the probative value here is very, very significant on the timing issue. It just happened within a week of when this murder took place. So I think under that rule I got to admit it. You can make a record on anything else you want.

COUNSEL: Just one more, Judge, that ruling under 403, that it's a prejudicial effect.

THE COURT: All right. The Court is going to make a finding that the prejudicial effect does not outweigh the probative value. It is probative. The Court will admit it because it's a homicide case. . . .

Here, the trial court clearly conducted a balancing test to determine whether the probative effect of the proffered 404(b) evidence was substantially outweighed by the danger of unfair prejudice. Based on the record, the trial court found that the "the

non-character conformity purpose for which [the Mujeres Unidas evidence was] proffered" was the history and nature of Trejo and Tijerina's prior relationship. *See Smith*, 5 S.W.3d at 679. The trial court also held that the timing of the alleged rape was highly relevant to the case and information that the jury deserved to hear. *See* TEX. R. EVID. 401, 403. Because we conclude that the decision to admit this evidence was within the reasonable zone of disagreement, *Moses*, 105 S.W.3d at 627, we overrule Trejo's second issue.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review and Applicable Law

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. 1 § 10; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051 (West 2010). To prove ineffective assistance of counsel, the defendant must meet the heavy burden established in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). In *Strickland*, assistance of counsel is ineffective if, in considering the totality of the circumstances: (1) counsel made such serious errors that she was not functioning effectively as counsel; and (2) counsel's deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Id.*; *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We will not find counsel ineffective when the record is

10

silent as to counsel's reasoning or strategy. *Godoy v. State*, 122 S.W.3d 315, 322 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

**B.    Discussion**

Trejo contends that he had ineffective assistance of counsel when his attorney failed to object to the following on Sixth Amendment grounds:    (1) the testimony of the SANE, Lorenza Guerrero; (2) the admission of the SANE report; (3) the admission of a toxicology report attached to Tijerina's autopsy report; and (4) the testimony of Edinburg police officer Armando Esquierdo, who testified that Tijerina told him that Trejo raped her and violated a protective order.    Trejo's attorney did, however, object to all of this evidence on hearsay grounds.    *See* TEX. R. EVID. 801(d) (providing that hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

The record is silent as to why Trejo's attorney decided to object to the aforementioned evidence on the basis of hearsay rather than as alleged Sixth Amendment violations.    Because the record does not affirmatively demonstrate Trejo's counsel's reasoning or strategy for objecting on this basis, we hold that Trejo has failed to prove how his attorney's actions were ineffective or deficient.    *See Thompson*, 9 S.W.3d at 813.    Further, even assuming for the sake of argument that trial counsel's performance was deficient for failing to raise confrontation clause objections, Trejo has failed to show how these acts prejudiced his defense such that the result would have been different but for counsel's alleged deficiency.    *See Strickland*, 466 U.S. at 687. We overrule this issue.

**V.    CONCLUSION**

Having overruled all of Trejo's issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
30th day of August, 2012.